THE STATE OF OHIO, APPELLEE, v. FRAZIER, APPELLANT.

[Cite as State v. Frazier (1991), 61 Ohio St.3d 247.]

(No. 90–471—Submitted March 19, 1991—Decided July 31, 1991.)

*Stephanie Tubbs Jones*, prosecuting attorney, *Jack H. Hudson* and *Patric Mary O'Brien*, for appellee.

*David L. Doughten*, for appellant.

*Wayne Frazier, pro se.*

ALICE ROBIE RESNICK, J.   Appellant asserts in his first proposition of law that the evidence was insufficient to support his convictions.   Construing the evidence in this case in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.   *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573.   From a review of the entire record we find overwhelming evidence going to every element of the crimes.   Both Speights and Albert were acquainted with the appellant.   Thus his identity is not in question.   Speights was nineteen years old at the time of the incident and was in a position to observe the appellant and his two accomplices. Speights testified that appellant, his brother Michael, and Evans came to his father's apartment, and that Evans pulled a gun on Williams and demanded money.   Speights further testified that appellant stabbed Joann Richards. After Evans stabbed Williams and Speights was stabbed by Michael, the assailants fled the apartment with property belonging to Williams and Joann Richards.   Appellant's conviction is supported by overwhelming evidence, and thus, this proposition of law is without merit.

Appellant contends in his second and third propositions of law that Albert Richards, age seven, was incompetent to testify.   Specifically, appellant argues that Albert did not understand the nature of an oath, the necessity to tell the truth, and failed to demonstrate the intellectual capacity necessary to relate the events of the night in question.   Evid.R. 601 provides that "[e]very person is competent to be a witness except: (A) * * * children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * *."   It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's

competency to testify. Such determination of competency is within the sound discretion of the trial judge. The trial judge has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully. Thus, the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them. See *State v. Wilson* (1952), 156 Ohio St. 525, 46 O.O. 437, 103 N.E.2d 552.

The trial court permitted counsel to examine Albert on voir dire. At the conclusion of the questioning, the court found that Albert could relate just impressions as to things that he had observed and was therefore competent to testify. Appellant asserts that Albert lacked the intellectual capacity either to accurately recount the events at issue or to understand his obligation to tell the truth.

In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful. See, generally, Annotation (1988), Witnesses: Child Competency Statutes, 60 A.L.R.4th 369. A similar analysis was employed by the court of appeals in *State v. Kirk* (1987), 42 Ohio App.3d 93, 536 N.E.2d 391.

Applying the foregoing to appellant's contention, Albert appeared to have the ability to receive and recollect accurate impressions and relate the events of the night in question. The main material inconsistency in Albert's testimony appeared to be that he referred to appellant as "Twin," yet insisted that "Twin's" real name was Michael. However, Albert identified the appellant in both a line-up and in court. The other facts which Albert related were consistent with those testified to by Speights. Additionally, appellant asserts that Albert was incompetent to testify since he did not fully comprehend the need to testify truthfully. We disagree. Albert consistently testified that if he did not tell the truth he would receive a "whooping." Albert exhibited an understanding of truth and falsity and appeared to appreciate his responsibility to be truthful.

Lastly, appellant argues that Albert was incompetent to testify since he did not understand the meaning of an oath. Evid.R. 603 provides that "every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." The Staff Note to this rule provides

that no special verbal formula is required for either oath or affirmation and further provides that "[t]he rule is designed to afford flexibility in dealing with children, persons with mental defects, atheists, members of religions not willing to swear an oath to God, to an extent not otherwise covered in Rule 601." The trial court administered the oath to Albert and was satisfied that he knew that he was required to tell the truth and that if he did not tell the truth he would be punished. Evid.R. 603 was fully complied with. Accordingly we find that the witness was competent to testify; thus the trial court did not abuse its discretion in so finding.

In his fourth proposition of law appellant asserts that the trial court erred in the admission of certain photographs. Because appellant failed to object to the admission of the photographs at trial, our review must proceed under the plain error analysis of Crim.R. 52(B). *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899. The admissibility of photographs has been considered by this court on numerous occasions. In *State v. Woodards* (1966), 6 Ohio St.2d 14, 25, 35 O.O.2d 8, 14, 215 N.E.2d 568, 577, we held that "[a]lthough a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." Thus we have placed the admissibility of photographs within the sound discretion of the trial court. *State v. Hill* (1967), 12 Ohio St.2d 88, 41 O.O.2d 369, 232 N.E.2d 394, paragraph two of the syllabus. See Evid.R. 403(B). Recently we have refined this holding when dealing with death penalty cases. In *State v. Morales* (1987), 32 Ohio St.3d 252, 257–258, 513 N.E.2d 267, 273–274, we stated that "in *capital* cases, this court has, in *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, set forth a stricter evidentiary standard for the introduction of photographs. In *Maurer, supra,* this court held in paragraph seven of the syllabus that: 'Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number.'" (Emphasis deleted in part.)

Applying the *Maurer* standard to the photographs in this case we find that the trial court did abuse its discretion. The photographs are indeed gruesome since they depict two homicides caused by stab wounds. Sixteen pictures of the bodies were admitted and we find some are cumulative or repetitive. The photographs show the two bodies in different positions, and exhibit all the stab wounds. However, as to the photographs of Joann Richards' body, state exhibits 2 and 8 are cumulative and repetitive. In addition, as to the

photographs of Williams' body, state exhibits 12 and 16 are cumulative and repetitive. Nevertheless, we find that the error in the admission of these four photographs does not rise to a level of plain error. "* * * Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *Moreland, supra,* 50 Ohio St.3d at 62, 552 N.E.2d at 899. The admissible photographs clarified the testimony regarding number, placement, types of wounds inflicted, and cause of death. Appellant's fourth proposition of law is without merit.

Appellant in his fifth and seventh propositions of law asserts that his trial counsel was ineffective in that he cross-examined Officer Farinacci as to whether appellant made any statements after arrest, and also introduced jointly with the prosecution, prison and other records, and made subsequent assertions as to certain of those records in the mitigation phase. The Sixth Amendment's guarantee of the right of counsel is the right "to the effective assistance of competent counsel." *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773. In determining whether a defendant had effective assistance of counsel, we must adhere to the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, wherein it is stated: "* * * [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."

Additionally, the *Strickland* court strongly cautioned courts considering the issue of ineffective assistance of counsel that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac,* 456 U.S. 107, 133–134 [102 S.Ct. 1558, 1574, 1575, 71 L.Ed.2d 783, 804] (1982). * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

Additionally this court has held in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph two of the syllabus, that "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], followed.)"

With the foregoing standards in mind we will proceed to address the specific allegations of ineffectiveness of counsel and determine whether defense counsel's performance fell below the standard of reasonable representation and whether the appellant was prejudiced thereby, thus making the trial result unreliable.

The first allegation of ineffective assistance of counsel relates to when defense counsel inquired of an investigative officer whether appellant had made any statements upon arrest. After a review of the record it appears that this was clearly a trial strategy, since appellant had contended throughout the proceeding that he received the cuts on his hand when he was attempting to prevent the stabbings. The detective instead stated that appellant had made no statement. Courts are generally cautious when any reference is made to a defendant's choice of silence since it is an exercise of a constitutional right. See *United States v. Hasting* (1983), 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96; *State v. Thompson* (1987), 33 Ohio St.3d 1, 514 N.E.2d 407. However, in this case defense counsel was attempting to elicit certain testimony from the officer regarding the wounds to his client's hand. Defense counsel did not, however, elicit the desired response. From this we cannot say that appellant was prejudiced to such a degree as to make the outcome of the trial unreliable. We must remember that this case was tried to a three-judge panel which was capable of drawing the correct conclusion. Defense counsel also attempted to draw testimony from the police regarding the fact that appellant cooperated with them. Again the desired response was not obtained since the officer did not believe the appellant. However, considering the totality of the circumstances it cannot be said that this question rendered the result of the trial unreliable.

Appellant also asserts that trial counsel was ineffective when introducing and commenting on certain records. During the penalty phase of the trial appellant's juvenile court records, prison records, records from the Adult Parole Authority, and pretrial competency and sanity reports were introduced as joint exhibits. It again must be stated that this case was being tried to a three-judge panel and apparently defense counsel believed that this informa-

tion would benefit appellant in mitigation by evidencing a tragic childhood and the detrimental effects of our prison system on appellant by failing to provide proper psychological care. However, these records also exhibited appellant's extensive criminal record. We must recognize that trial counsel is afforded broad authority in determining what evidence will be offered in mitigation. Apparently defense counsel was attempting to support each statutory mitigating factor. We cannot say that counsel was ineffective simply because the trial strategy proved unsuccessful. The record evidence must be considered in light of all the evidence presented, and as a result we cannot say that appellant was not afforded an effective counsel or that he was prejudiced by counsel's performance. In sum we find appellant's fifth and seventh propositions of law not well-taken.

Appellant argues in his sixth proposition of law that the indictment was defective and should have been dismissed since it did not allege the defendant's specific intent to cause the deaths of Williams and Joann Richards. The indictment in this case charged appellant with the purposeful killing of both Williams and Joann Richards. This court first upheld this practice in the case of *Hanoff v. Ohio* (1881), 37 Ohio St. 178. Hence, a defendant is sufficiently advised of the charges against him when the indictment alleges that he purposely caused the death of another. We find no merit to this proposition of law.

In his eighth proposition of law appellant contends that the trial court failed to consider the evidence presented in mitigation in its sentencing determination. We do not agree. The trial court carefully considered all the mitigating factors set forth in R.C. 2929.04. The panel addressed each factor in light of the evidence presented and found as to each that there was no credible evidence presented. Additionally, the panel specifically stated that it "has considered 'as a matter of law any relevant mitigating factor' and has applied 'the type of individualized consideration of mitigating factors ... required by the Eighth and Fourteenth Amendment[s] in a capital case.' *Eddings v. Oklahoma* [455 U.S. 104], 102 Sup.Ct. 869, 71 L. Ed 2d [1] (1982); *Enmund v. Florida* [458 U.S. 782], 31 Cr. L. 3149 (July, 1982), 73 L.Ed.2d 1140, 102 Sup.Ct. 3368; *Lockett v. Ohio*, 428 [*sic*, 438] U.S. 586 at Note 5 at 605 [98 S.Ct. 2954 at Note 5 at 2965, 57 L.Ed.2d 973 at Note 5 at 990] (1978)." It is readily apparent that the panel not only considered the evidence in view of the six specific mitigating factors but additionally considered the evidence in light of any other mitigating factors before determining sentence. See *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598.

In sum, the trial court proceeded properly. Appellant's eighth proposition of law is found to be without merit.

In his ninth proposition of law appellant argues that the three-judge panel improperly considered non-statutory aggravating circumstances. As to this contention the court of appeals found that the trial court erroneously considered that the appellant had committed both aggravated murders as principal offender and with prior calculation and design. The appellate court, however, found that since the panel determined that there were no mitigating factors established the error was harmless. We agree. This case is distinguishable from our holding in *State v. Penix* (1987), 32 Ohio St.3d 369, 513 N.E.2d 744, wherein we held that the trial court could not instruct the jury to consider as aggravating circumstances that the defendant acted with prior calculation *and* design *and* as the principal offender. In *Penix, supra*, a mitigating factor was found, thus the sentencing determination was rendered unreliable. In the absence of a finding of mitigating factors here, the determination of the trial panel is reliable even after the inappropriate aggravating circumstance has been stricken. Appellant's ninth proposition of law is without merit.

In his tenth proposition of law appellant asserts that the death penalty cannot be imposed where the mass murder specification and the felony murder specification are not merged. We have previously held that "where two or more aggravating circumstances arise from the same act or indivisible course of conduct and are thus duplicative, the duplicative aggravating circumstances will be merged for purposes of sentencing." *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph five of the syllabus; *State v. Spisak* (1988), 36 Ohio St.3d 80, 84, 521 N.E.2d 800, 803. However, in the case at bar these two specifications are not duplicative since they did not arise from the same act or indivisible course of conduct. The indictment alleged and the evidence established that the felony murder specification arose from appellant's commission of aggravated burglary and aggravated robbery. However, the mass murder specification arose from defendant's commission of the additional murder and attempted murder. Thus the specifications do not arise from the same indivisible course of conduct and are not duplicative. Appellant's tenth proposition of law is without merit.

Appellant asserts in his eleventh proposition of law that it is a violation of his Eighth Amendment right to require him to prove the existence of mitigating factors by a preponderance of the evidence. This court has resolved this issue previously in *State v. Jenkins, supra*, and *State v. Stumpf, supra*, 32 Ohio St.3d at 101, 512 N.E.2d at 605–606; thus, this issue is found to be without merit.

Next, appellant contends that the felony murder specification of R.C. 2929.04(A)(7) fails to narrow the class of persons eligible for the death penalty

and results in a violation of the Eighth and Fourteenth Amendments to the United States Constitution. This issue has been decided by this court in *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph two of the syllabus; *State v. Broom* (1988), 40 Ohio St.3d 277, 291, 533 N.E.2d 682, 697; and *State v. Barnes* (1986), 25 Ohio St.3d 203, 207, 25 OBR 266, 269, 495 N.E.2d 922, 925, certiorari denied (1987), 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 701. This proposition of law is without merit.

Appellant's thirteenth proposition of law alleges that defense counsel's requests for presentence reports of mental examinations pursuant to R.C. 2929.03(D)(1) result in ineffective assistance of counsel. Again, we have previously addressed this issue and found this contention to be without merit. See *State v. Buell* (1986), 22 Ohio St.3d 124, 138, 22 OBR 203, 215, 489 N.E.2d 795, 808; *State v. Esparza* (1988), 39 Ohio St.3d 8, 10, 529 N.E.2d 192, 195.

Appellant in his fourteenth proposition of law challenges the constitutionality of Ohio's death penalty on the basis of the Sixth, Eighth and Fourteenth Amendments. We have found Ohio's death penalty scheme constitutional in *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293; *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, certiorari denied (1988), 488 U.S. 916, 109 S.Ct. 272, 102 L.Ed.2d 261; *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, certiorari denied (1988), 485 U.S. 916, 108 S.Ct. 1089, 99 L.Ed.2d 250; *State v. Buell, supra;* and *State v. Jenkins, supra.* Appellant's fourteenth proposition of law is overruled.

In this case appellant personally has submitted a brief and propositions of law which we have thoroughly reviewed. We find after such consideration that appellant has failed to raise any credible issue which has not been raised by his counsel. We therefore find appellant's ten propositions of law to be without merit.

Pursuant to R.C. 2929.05 we will now proceed to independently determine whether the aggravating circumstances outweigh any mitigating factors which could have been present in this case and thus whether the sentences of death are appropriate.

The evidence in this case established that appellant, while in the company of two accomplices, entered the apartment of one of the victims, Williams, with the intent to commit a robbery. After being in the apartment for a short period of time one of the accomplices exhibited a gun, held it to Williams' head, and demanded money. Subsequently, Williams was knocked down, kicked, and stabbed to death. Appellant pulled a knife and stabbed to death the other victim, Joann Richards. Richards was stabbed thirty-two times. Additionally, Williams' son, Speights, was stabbed twenty-one times but survived. Also present in the apartment at the time were an infant and a

seven-year-old child who were left unharmed. The appellant and his two accomplices took personal property belonging to Williams and Joann Richards and fled the apartment. It is clear from this evidence that the offenses were committed while the appellant was committing aggravated burglary and aggravated robbery and that appellant acted as either principal offender or otherwise acted with prior calculation and design, and that the offenses were part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons. From this it can be seen that two aggravating circumstances were established beyond a reasonable doubt. Proceeding now to a consideration of mitigating factors, we find that the victims of the offenses did not induce or facilitate these acts; appellant was not under duress, coercion or strong provocation; there was no evidence establishing that appellant at the time of the offense was suffering from a mental disease or defect or lacked substantial capacity to appreciate the criminality of his act or to conform his conduct to the law; appellant was twenty-eight years of age at the time of the offense, thus he was not a youthful offender; appellant had a prior criminal record; and appellant acted as principal in the killing of Joann Richards. Appellant also gave a statement at the mitigation hearing. From the foregoing evidence presented in mitigation, nothing is found to in any way mitigate the nature of appellant's acts. Based upon these considerations, we find that no mitigating factors were established and, thus, the aggravating circumstances clearly outweigh evidence of mitigation beyond a reasonable doubt.

Lastly, we must consider the appropriateness and proportionality of these sentences of death to other cases. After considering other cases involving aggravated murders which were a part of a course of conduct involving a purposeful killing of or attempt to kill two or more persons, we find that the death penalty in this case is not excessive or disproportionate to the penalty in similar cases such as *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622; *State v. Sowell* (1988), 39 Ohio St.3d 322, 530 N.E.2d 1294; *State v. Poindexter, supra; State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523; and *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407. Additionally we find that the sentences of death in this case are not excessive or disproportionate to the sentence imposed in the following cases where the aggravated murder was committed in the course of aggravated robbery or aggravated burglary. *State v. Jamison* (1990), 49 Ohio St.3d 182, 553 N.E.2d 180; *State v. Johnson* (1989), 46 Ohio St.3d 96, 545 N.E.2d 636; *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476; *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55; *State v. Martin* (1985), 19 Ohio St.3d 122, 19 OBR 330, 483 N.E.2d 1157; and *State v. Jenkins, supra.*

Accordingly, we affirm appellant's convictions and death sentences. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.