OPINION
Appellant, Joanne Longmire, appeals her conviction and sentence in the Portage County Court of Common Pleas on one count of felonious assault. For the reasons that follow, we affirm the judgment of the trial court.
Appellant was indicted by the October 1996 term of the Portage County Grand Jury on one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1) and (B). Appellant was represented by court-appointed counsel at her arraignment on December 18, 1996, and pled not guilty. The record reveals that appellant was subsequently unwilling to enter into a plea bargain with the state, and the case was scheduled for trial.
However, on January 14, 1997, appellant's court-appointed attorney moved the court to withdraw as counsel, asserting that appellant was uncooperative and unwilling to have him continue to represent her. On January 27, 1997, the court held a hearing on counsel's motion, ultimately allowing counsel to withdraw from the case.[1]
From this point on, the record reveals that appellant began to proceed pro se in her defense. On January 27, 1997, appellant filed a handwritten letter with the court which indicated that she wished to have a bench trial and that she did not need an attorney. On January 29, 1997, the trial court entered a judgment entry and order which granted appellant's request to proceed prose. However, on February 7, 1997, the trial court appointed counsel from the public defender's office to assist appellant in preparation for trial. The transcript of appellant's subsequent trial reveals that the public defender was not assigned to represent appellant actively at trial, but to sit by her side and advise her of legal matters should she request his advice.
Finally, the record reveals that appellant signed a written waiver of her right to a trial by jury as well as her right to a court-appointed attorney February 26, 1997 and February 28, 1997, respectively. The case proceeded to a two-day bench trial beginning on February 28, 1997 and carried over to March 6, 1997. As previously indicated, appellant proceeded pro se, but with counsel available at her side.
The case arose from events which occurred during the evening hours of December 5, 1996. Appellant and her sister, Sheila Longmire, were preparing dinner at their mother's residence in Ravenna, Ohio. Appellant and her sister decided to invite the sister's two children, also appellant's niece and nephew, over to the house for dinner.
The two children were staying with their father, Thaniel Calhoun ("Calhoun"), who apparently no longer resided with appellant's sister. Thus, Calhoun was called and asked to drop the children off at their grandmother's house for dinner. Several hours later, Calhoun dropped the two children off at the house.
Appellant testified that her niece acted strangely from the moment she arrived. Appellant theorized that Calhoun had somehow turned the child against her, making the child afraid to visit appellant. Thus, soon after the children's arrival, appellant's sister telephoned Calhoun and asked him to return and collect the children.
At this point, the testimony diverges. Calhoun testified that he immediately returned to the house to collect the children as requested. He testified that he pulled into the driveway and blew the horn, waiting for the children to come out of the house. When they did not, he got out of his car, walked up to the front door and knocked. According to Calhoun, appellant's sister opened the door and became argumentative, complaining that Calhoun had turned his daughter against appellant. She then hit him with a grate from the heating duct. Subsequently, appellant ran down the stairs behind her sister, picked up an empty wine bottle and struck Calhoun in the jaw with the bottle. Calhoun then left with the children, reported the incident to the police and went to the emergency room. Medical testimony presented at trial confirmed that the blow to the jaw caused serious damage.
Appellant's testimony was that when Calhoun returned to the house to pick up the children, he was in a rage. She claimed he broke open the front door of the house and without provocation began physically assaulting her sister. Appellant remained upstairs listening to the altercation, and then ran to the front door to aid her sister. Appellant testified that she saw Calhoun grab her sister by the neck. Appellant stated that she shoved Calhoun and told him to leave the residence. Instead, he charged back into the house and again began to attack her sister. Appellant then grabbed an empty wine bottle and struck him.
Although she admitted to striking Calhoun with the wine bottle, appellant testified that she did so in self-defense and in order to aid her sister. Appellant also testified that both she and her sister telephoned "911" several times at the time of the incident, but that she received no response from the police. Appellant attempted to introduce phone records and testimony from 911 dispatchers to corroborate her story. Appellant's sister also testified, corroborating appellant's story.[2]
In turn, the state introduced testimony from appellant's eight-year-old nephew, Edward. Edward corroborated his father's story. Before allowing Edward to testify, the trial court conducted a brief voir dire to determine his competency to testify. The trial court concluded that the boy was competent to testify, and appellant did not object.
In addition, the state elicited testimony from appellant's sister during cross- examination which established that she had also been charged in connection with the incident. The sister admitted that when she testified at her own trial, her story was apparently contrary to her testimony at appellant's trial. The sister stated that, at her own trial, her attorney advised her to "put it all on [appellant]."
The trial court found appellant guilty as charged and sentenced her to a definite five-year term of imprisonment. From her conviction and sentence, appellant perfected a timely appeal, asserting one assignment of error:
 "The conviction of the Appellant is against the manifest weight of the evidence. The trier of fact considered incompetent testimony in finding the Appellant guilty of felonious assault."
Initially, we note that appellant has not alleged any deprivation of her constitutional right to counsel in the proceedings below. Nor do we perceive plain error in this regard. Appellant was advised, on the record at least once, of the perils of such representation before she signed a written waiver of counsel.[3] The trial court, in fact, attempted to dissuade appellant from proceeding pro se, albeit with little success, and even appointed counsel to advise appellant at trial if she so desired.
As to the merits of the case, appellant's sole assignment of error asserts that appellant's conviction is against the manifest weight of the evidence.[4] The "weight of the evidence" concerns the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. State v. Thompkins (1997), 78 Ohio St.3d 380,387.
The main thrust of appellant's argument is that she successfully established that she was privileged to use force in order to defend herself and her sister from Calhoun's attack. However, the judgment of the trial court indicates otherwise. It is apparent from the trial court's decision that the court did notbelieve appellant's rendition of the events which transpired onthe evening of December 5, 1996. The court was faced with two conflicting accounts as to why appellant struck Calhoun with the wine bottle. The weight to be given the evidence and the credibility of the witnesses is a matter for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Consequently, when viewed in the light most favorable to the prosecution, there was sufficient evidence upon which a rational trier of fact could find that without privilege to do so, appellant knowingly struck Calhoun with the wine bottle so as to cause serious physical harm to him pursuant to R.C. 2903.11(A)(1) and (B).[5] We conclude that the inclination of the greater amount of credible evidence, i.e., the manifest weight, lies with the testimony of the victim and his son, Edward.
Specifically, Calhoun testified that he did not provoke appellant, that he did not charge into the house, and that he was not physically assaulting appellant's sister when appellant struck him in the jaw with the wine bottle. Calhoun's son, Edward, corroborated his father's story. Indeed, appellant's sister admitted that her story of what happened changed from the time she testified at her own trial, thus making her corroboration of appellant's story less credible.
Concerning the admission of Edward's testimony, appellant now asserts that the trial court relied on "tainted" testimony from the child. Specifically, appellant alleges that the trial court failed to conduct a proper voir dire to ascertain the child's competency to testify as he was under the age of ten at the time of the trial. We disagree.
Initially, we note that appellant failed to object to the court's ruling as to Edward's competency to testify at trial. Thus, she failed to preserve this issue for review. Generally, in the absence of an objection, a reviewing court will not consider an alleged error unless it rises to the level of plain error. See Crim.R. 52(B); State v. Williams (1974), 39 Ohio St.2d 20, 25;State v. Brown (1993), 85 Ohio App.3d 716, 719. To constitute plain error, it must be evident in the record that the error occurred; and, but for the error, the outcome of the trial would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus; State v. Napier (1995), 105 Ohio App.3d 713,723; State v. Durst (Dec. 26, 1997), Trumbull App. No. 96-T-5563, unreported, at 9. In the instant case, we determine not only is there no plain error, there is no error at all in this regard.
Evid.R. 601(A) provides that "[e]very person is competent to be a witness except: (A) * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." A determination of competency is within the sound discretion of the trial judge. State v. Frazier (1991), 61 Ohio St.3d 247,251. The Supreme Court of Ohio held in Frazier:
 "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." Id. at syllabus.
At the time of the trial, Edward was eight years old. He testified that it was his mother, appellant's sister, who started the fight, rather than his father; and that appellant reached past his mother and struck his father in the jaw with the wine bottle. The prosection began the preliminary voir dire examination to determine if Edward was competent to testify. Then, the court took over the questioning upon its observation that the prosecution was "leading pretty badly." Subsequently, the court asked Edward about his likes and dislikes, recent and past events at school, and whether he understood what would happen should he fail to tell the truth under oath. Upon Edward's reply that he would "[g]et in trouble," the court pronounced him competent to testify.
Additionally, the record demonstrates that Edward appeared to have the ability to receive and recollect accurate impressions and relate the events of the night in question. Consequently, we cannot say that the trial court either abused its discretion or committed plain error in admitting Edward's testimony.
In light of the foregoing analysis, appellant's sole assignment of error is without merit. The judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY, JUDGE.
FORD, P.J., and NADER, J., concur.
[1] No transcript of this hearing was presented to this court.
[2] Appellant also called her mother to testify. However, her mother was not in the same room when the incident occurred. Thus, she could not offer much in the way of corroboration of appellant's story.
[3] Before appellant's trial commenced, the court went on the record and questioned appellant about her decision to waive counsel. This discussion indicated that the trial court had warned appellant of the dangers of self-representation long before trial was to commence. Moreover, even though we do not have a transcript of the hearing at which appellant's counsel was discharged, we will presume regularity in the proceedings below as appellant has failed to challenge those proceedings on appeal. Specifically, the court asked appellant: "You are doing this voluntarily, and you still want to defend yourself, understanding you have a right to have an attorney represent you?" (Emphasis added.) Appellant responded affirmatively. The trial court again asked, "And you want to waive your right to have an attorney represent you?" Again, appellant responded affirmatively. Finally, the trial court asked appellant to sign a written waiver of counsel. The court stated: "I would hand you a written waiver, if that's what you want to do. The Court would discourage you from doingthat, but if that's what you want to do — ." (Emphasis added.) Appellant responded:
"Well, * * * the appointed attorneys they have been giving me, they're not helping, so why waste the tax payers' money?" The trial court accepted appellant's waiver but insisted that counsel sit next to appellant during trial to advise her if she so desired.
[4] We note that although appellant's assignment specifically addresses manifest weight, his argumentation includes some elements of a sufficiency attack.
[5] R.C. 2903.11(A)(1) reads in pertinent part: "(A) No person shall knowingly: (1) Cause serious physical harm to another * * *."