[Cite as *State v. Liccardi*, 2017-Ohio-7947.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-A-0054** |
| RICHARD W. LICCARDI, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 00621.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellant).

*Dean F. Topalof* and *Richard R. Danolfo,* Ashtabula County Public Defender, Inc., 4817 State Road, #202, Ashtabula, OH 44004 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, the state of Ohio, appeals from the September 6, 2016 judgment of the Ashtabula County Court of Common Pleas, granting appellee's, Richard W. Liccardi, motion in limine and declaring a six-year-old child witness incompetent to testify. Finding no error, we affirm.

**{¶2}** On November 18, 2015, Liccardi was indicted by the Ashtabula County Grand Jury on two counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4) and (C)(2). These charges were based on allegations that he had sexual contact with D.L., a minor child.

**{¶3}** Liccardi filed a motion in limine on March 28, 2016. He argued that the victim was only four years old at the time the crimes allegedly occurred and is incompetent to testify under R.C. 2317.01 and Evid.R. 601(A).

**{¶4}** A competency hearing was held on August 31, 2016, at which D.L., who was six years old, was questioned by the judge, prosecutor, and defense counsel. D.L. stated her age, date and month of birth, address, school, grade, and teacher. She described her previous education as including kindergarten and pre-school.

**{¶5}** When asked questions regarding the court process, she did not know what a judge does or what an oath is. The following questioning took place regarding lies and the truth:

**{¶6}** "JUDGE: Okay. Do you know what it means to tell the truth?

**{¶7}** "D.L.: Yes.

**{¶8}** "JUDGE: Okay. Tell me about that. What do you think of when someone says tell the truth?

**{¶9}** "D.L.: I told my dad the truth when my uncle [Liccardi] did something bad to me.

**{¶10}** "JUDGE: I see. Okay. Can you tell me the difference between right and wrong?

**{¶11}** "D.L.: Yeah.

**{¶12}** "JUDGE: Tell me about that.  Tell me what that means.

**{¶13}** "D.L.: My uncle did something bad and I did something right.

**{¶14}** "JUDGE: Okay.  So what does it mean if you tell a lie?  Do you know what that means?

**{¶15}** "D.L.: That means you're lying.

**{¶16}** "JUDGE: Okay.  But what does that mean to you?  How would I know if you were lying to me or not?

**{¶17}** "D.L.: Cause I would have to tell you the truth.

**{¶18}** "JUDGE: Okay.  But can you explain at all what it means to you, the difference between when you tell the truth and when you tell a lie?

**{¶19}** "D.L.:  All's I know about what to say about lying and truth.

**{¶20}** "JUDGE: That's all you know?

**{¶21}** "D.L.: Yeah.  And my brother once lied to me about something.  He told me he was 4 when he was 3."  (T.p. 19-20).

**{¶22}** D.L. further explained that this was a lie because she "knew he was 3." (T.p. 20).  She explained that if she lies, her parents will get mad and spank her and that lying is a bad thing.

**{¶23}** D.L. described the past Christmas, noting that she was five at that time, and discussed a present she received.  She also described a present she received the Christmas when she was four, as well as certain events that occurred at her third birthday party.

3

**{¶24}** When questioned by the prosecutor, D.L. stated that she understood what it means to tell the truth and to tell a lie. When asked "[w]hich one of those is good" she responded "[t]he truth." (T.p. 25).

**{¶25}** Defense counsel asked how long Liccardi had been living with D.L.'s family and she stated since she was four. When asked whether he lived with her before she was four, this line of questioning ended following an objection.

**{¶26}** Following the hearing, the judge stated that he believed D.L. had a " really hard time" receiving and relating her impressions and that her discussion of her uncle's conduct when asked what it means to tell the truth, "was not a responsive answer." (T.p. 36). The court also noted that "family members undermine the credibility of child witnesses by talking to them too much," following an expression of concerns that D.L. was "prepped." *Id.* It also noted that the indictment charged Liccardi with conduct starting at D.L.'s birth, about which she would not be able to accurately testify.

**{¶27}** The September 6, 2016 judgment entry stated: "[i]n the assessment of whether the child witness is capable of receiving just impressions of the facts and transactions respecting which they are examined, the Court finds that the alleged victim * * * is not competent to testify at trial."

**{¶28}** The state timely appeals and raises the following assignment of error:

**{¶29}** "The trial court abused its discretion in finding that D.L. was incompetent to testify as a witness."

**{¶30}** The determination of competency is within the sound discretion of the trial judge. *See State v. Frazier*, 61 Ohio St.3d 247, 252 (1991). The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither

comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶31}** Children were first permitted to provide courtroom testimony in 1895. *The Child Witness in the Courtroom*, Robert H. Pantell, Committee on Psychosocial Aspects of Child and Family Health, *2 (Feb. 2017), http://pediatrics.aappublications.org. Almost a century later, children have increasingly served as witnesses in criminal, civil, and family courts. *Id.* at *1. "A growing body of scientific literature on the psychological and physiologic consequences of children witnessing and experiencing violence, as well as appearing in court, has supported modifications of courtroom procedures." *Id.* at *2.

**{¶32}** "The purpose of child testimony in court is to provide trustworthy evidence. The qualifications for a child to provide testimony include the following: sufficient intelligence, understanding, and ability to observe, recall, and communicate events; an ability to comprehend the seriousness of an oath; and an appreciation of the necessity to tell the truth." *Id.* at *3-4.

**{¶33}** "Substantial gaps exist in our knowledge of how to optimize the care of children in the courtroom. A limited number of long-term follow-up studies on the adverse consequences of child testimony have been conducted, and no prospective studies on the benefits of specific system improvements to benefit the child or the legal system have been performed. * * * Finally, with advances in technology and changes in law, interventions should be developed and tested for their ability to reduce adverse

5

consequences and improve outcomes for children interacting with the judicial system." *Id.* at *10.

**{¶34}** In this case, the trial judge was in the best position to determine D.L.'s competency to testify. The trial judge was able to ask her questions, observe her while she responded, and observe her answers to questions by counsel for both parties. The trial court considered the criteria outlined in *Frazier* ("In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.") *Frazier, supra,* at syllabus.

**{¶35}** The record reveals that six-year-old D.L. was unaware of what an oath is and was having difficulty receiving and relating truly just impressions. *See* R.C. 2317.01 ("All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.") Regarding the importance of telling the truth, it appeared that D.L. had been "prepped." *See State v. Wilson*, 156 Ohio St. 525, 532 (1952) (Court has a duty to conduct an examination to see if there is any indication that the child witness had been coached or instructed to answer questions in a particular manner). In addition, the indictment in this case charged conduct that began at D.L.'s birth until she was four years and eight months old. The trial court expressed proper skepticism that there was

6

no way a child witness could recollect events from such a young age, especially on the date of birth.

{¶36} The reliability of child witness testimony is one of the most researched and studied areas of the law. The data supports that child witnesses recount events based upon not only their memory as seen through the eyes of a child but consistent with the desires and wishes of the adults asking the questions. The intricacies of producing credible, reliable testimony of a child are directly related to the expertise and trained methodology of the inquiry. The chances of eliciting inaccurate and inherently unreliable testimony is high given that those clinical safeguards, where not implemented, the testimony was inherently unreliable. *See The Credibility of Children's Testimony: Can Children Control the Accuracy of Their Memory Reports*, Journal of Experimental Child Psychology, Vol. 79, Issue 4, pp. 405-437 (Aug. 2001).

{¶37} Upon consideration, we find nothing in the trial court's decision that could be considered as connoting judgment which neither comports with reason, nor the record. *See Ferranto, supra,* at 676-678. Thus, we find no abuse of discretion in the trial court's judgment, declaring D.L., a six-year-old child witness, incompetent to testify in court.

{¶38} For the foregoing reasons, the state's sole assignment of error is not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs in judgment only,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

7

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶39} I disagree with the majority's determination that the trial court did not abuse its discretion in finding six-year-old D.L. to be incompetent to testify. This conclusion is inconsistent with a careful review of D.L.'s testimony, in which she demonstrated her ability to understand the truth, recall events from preceding years in great detail, and receive and relate impressions of fact and observations. The trial court's ruling is not only an abuse of discretion but will have devastating consequences for D.L. and her family, who will not have the opportunity to have their day in court against D.L.'s alleged abuser.

{¶40} The majority concludes that "the record reveals * * * D.L. was unaware of what an oath is and was having difficulty receiving and relating truly just impressions." *Supra* at ¶ 35. No examples were provided to support this baseless statement or demonstrate what difficulties D.L. had in this regard. There were no indications that any of the testimony she gave describing various events was inaccurate or untruthful in any manner.

{¶41} To the contrary, D.L. was able to provide coherent and detailed testimony that established her memory and understanding of the need to be truthful. Regarding D.L.'s ability to receive, recall, and describe accurate impressions of fact, she gave a variety of information about herself and remembered details about past events such as her schooling and holidays. For example, D.L. discussed her most recent birthday party, and even recounted an event that occurred at her third birthday party, when she tried to put her head in the cake. She described presents she received during the

8

previous two Christmases in detail, and knew her age on those occasions. She could also explain her education history, where she went to school, and that she was three when she attended preschool, naming her teacher at that time. The foregoing demonstrates her ability to recall and describe events and facts, while the majority fails to provide any examples that would prove otherwise.

{¶42} The majority also concludes that the trial court "expressed proper skepticism" that D.L. would not be able to recall the events, pursuant to the indictment, that may have occurred beginning at her birth until she was four years and eight months old. *Supra* at ¶ 35. It is improper, however, to reach a conclusion on which events D.L. may be able to recall based on mere assumption.

{¶43} While the indictment specifies a period of time ranging from those ages, it does not state a specific date, nor is it necessary to prove the exact date of the offenses. *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). D.L. proved she could provide detailed testimony going back to at least the age of three. The majority and the trial court merely speculate that D.L. may not be able to remember the events giving rise to the crimes, ignoring her testimony, and seem to insinuate that she would be required to testify to events that occurred when she was an infant. This is an unreasonable assumption and an improper basis on which to find D.L. unfit to testify.

{¶44} Moreover, if D.L. could not recall the incidents sufficiently or accurately, the jury would be able to weigh the testimony to determine whether the charges were adequately proven. *See State v. Mitchell*, 8th Dist. Cuyahoga No. 70821, 1997 WL 156737, *3 (Apr. 3, 1997) ("weaknesses" in a child's responses are best explored through cross-examination at trial); *State v. Walsh*, 3d Dist. Union No. 14-97-20, 1997

9

WL 722773, *3-4 (Nov. 13, 1997) (a competency hearing is not a proper forum to determine the child's credibility as to the merits of the criminal conduct). It is noteworthy that D.L. was not questioned about the specific events giving rise to the crimes and, thus, it is impossible to determine she is unable to describe them accurately.

{¶45} D.L.'s ability to understand the obligation to be truthful was also more than adequately demonstrated. She was capable of explaining that she needed to tell the truth and gave an example that her brother told a lie when he said he was four years old but she knew he was actually three. She was also clear that she understood there would be consequences for being untruthful, which included her parents becoming mad and spanking her.

{¶46} Both the trial court and the majority expressed concern that D.L. had been coached or "prepped." Liccardi notes that, when asked about the truth and lies, she began discussing the facts of what Liccardi had done to her, which the court characterized as non-responsive. It is not particularly surprising, however, that a six-year-old, unfamiliar with court processes, would bring up facts relating to the underlying matter for which she knew she was appearing in court. It is hardly evidence that she was coached or a reason to discount her as a witness entirely, especially when weighed with all of the other factors showing she is a highly competent child witness.

{¶47} A conclusion that D.L. is competent to testify is consistent with other cases where a child was found competent when she was able to describe events, names, and people, and address the importance of the truth. *See State v. Ferguson*, 10th Dist. Franklin No. 07AP-999, 2008-Ohio-6677, ¶ 32 (where the five-year-old child indicated an understanding of lies and the need to tell the truth, and was able to state facts such

10

as his name, age, birthday, school information, and where the rape occurred, competency was established); *State v. Smith*, 11th Dist. Lake No. 2013-L-020, 2013-Ohio-5827, ¶ 37.

{¶48} It is troubling that the majority and the trial court are denying D.L. her day in court and her ability to confront the man who allegedly committed serious sexual crimes against her, based on assumptions and conclusory statements backed by little concrete reasoning. Rather than recognizing the many ways D.L. demonstrated her competence to testify, a few statements, which are readily explainable by D.L.'s young age and which have no impact on her competence, are being used to prevent the admission of her testimony.

{¶49} Since the trial court abused its discretion in ruling that D.L. could not testify at Liccardi's trial, its ruling should be reversed and D.L.'s testimony should be admissible at trial. For the foregoing reasons, I must dissent.