[Cite as *State v. Worthington*, 2024-Ohio-1714.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| BRAD WORTHINGTON | : | Case No. 23-CA-00004 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Municipal Court,
Case No. 21CRB00786


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        May 3, 2024


APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

TRICIA M. MOORE        MAX SUTTON
40 West Main Street        3 North 3rd Street
Newark, OH  43055        Newark, OH  43055

*King, J.*

{¶ 1}   Defendant-Appellant Brad Worthington appeals the April 26, 2022 judgment of the Licking County Municipal Court. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 12, 2021, Worthington and his live-in-girlfriend T.D. attended a charity poker run. The couple left home around 1:00 in the afternoon. Worthington was angry with T.D. before they left because she had allowed him to sleep longer than he had intended and they had missed the start of the poker run.

{¶ 3}   The two caught up with other participants at one of the bars on the ride. The event took them to five different bars where both consumed alcohol. At the second to last bar, Worthington was gesturing with his hands while talking and accidently struck T.D. in the jaw. The strike was so hard that T.D.'s teeth made a loud noise when they collided. When Worthington continued his conversation, T.D. tried to address the matter. Worthington told her she was fine and to get over it. This interaction drew the attention of other patrons. When a woman attempted to confront Worthington about striking T.D. Worthington grabbed the woman and jerked her, causing her husband to enter the fray. Punches and a beer bottle were thrown before the two were separated. T.D. managed to get Worthington to leave immediately after.

{¶ 4}   On the ride to the last bar, Worthington was furious with T.D. and accused her of undermining him by telling people he had hurt her. He was being very loud when they pulled into the parking lot of the last bar. T.D. spotted a deputy sheriff in the parking lot and assumed he was there due to the incident at the last bar. T.D. put her hand up to

Worthington's mouth to signal him to quiet down so as not to draw the attention of the deputy. But at the same moment, Worthington popped the clutch on the bike, causing T.D.'s hand to strike Worthington's face. He then accused her of assaulting him.

{¶ 5}    As they entered the bar, Worthington joked with the deputy about how fast he arrived, but discovered the deputy was not there for him. The two left the bar for home at around 2:30 a.m. Worthington remained angry.

{¶ 6}    Once home, Worthington dropped T.D. off in front of the house. He then rode the bike to the barn where he ended up laying the bike down. This made Worthington's mood worse. When he entered the house, T.D. was near the sliding glass door letting the dogs out. Worthington went to the bedroom where he removed his prosthetic leg. He then returned on his crutches to where T.D. was still standing tending to the dogs. He again berated T.D. for making him look bad in front of others, told her she had no idea what it was like to be hit by a man, and that he was going to show her. He then grabbed T.D. by the neck and threw her out the out the sliding door onto the deck. T.D struck her head, shoulder and back on a brick fire pit near the deck.

{¶ 7}    Worthington then dragged T.D back into the house by her hair and into the bedroom. T.D. tried to resist being dragged into the bedroom by grabbing the edge of the doorframe. Worthington smashed her arm with the door to get her to let go. He then began striking her repeatedly with his crutches and pressed a pellet gun to her eyes. At one point T.D. grabbed a bat to defend herself, but when Worthington lunged toward her as if to grab it, she threw it away from herself. T.D. began vomiting blood which annoyed Worthington. He told her to be an adult, stop getting blood on the carpet, and to go to the bathroom if she was going to vomit.

{¶ 8} The assault went on for some time. When T.D. would try to get up and leave, Worthington would prevent her from doing so. Eventually, he fell asleep. T.D. heard one of the dogs, which was still outside, barking. She asked Worthington if she could let the dog in and he permitted her to do so. T.D. took the opportunity to leave the house and walk to her parents home a short distance away. As she was walking down the road, she heard Worthington yell that she should think carefully about what she was doing.

{¶ 9} Upon arrival at her parents' home, T.D. displayed obvious injuries, was nauseous, vomiting, and disoriented. She resisted calling police, so her parents called. T.D.'s mother cleaned blood off of T.D.'s face and took photos of T.D. Responding paramedics and later a forensic nurse and Licking County Sheriff's Deputy noted bruising over most of T.D.'s body.

{¶ 10} Deputies went to Worthington's residence to discuss the matter but Worthington did not come to the door for several hours. When deputies did talk to Worthington, he denied striking T.D. except for the accidental strike at the bar. Asked about the bruising to T.D.'s body, Worthington stated T.D. bruises easily due to a medication she takes, and is out of control when she is drinking. Asked about the injury to T.D.'s head, Worthington stated T.D. fell down in the bedroom and must have hit her head.

{¶ 11} Worthington was subsequently charged with one count of domestic violence and one count of assault, both misdemeanors of the first degree. Worthington pled not guilty to the charges and opted to proceed to a jury trial which took place on April 25, 2022. After hearing the evidence and deliberating, the jury found Worthington guilty as

charged. Following merger of the counts, the trial court sentenced Worthington to 60 days jail time for domestic violence, and two years of probation.

{¶ 12} Worthington filed a pro se appeal which was dismissed for want of prosecution. Worthington later filed a motion for delayed appeal, which we granted on March 6, 2023. Worthington raises two assignments of error as follow:

I

{¶ 13} "APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 14} "THE APPELLANT WAS DENIED A FAIR TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION DUE TO THE INEFFECTIVENESS OF COUNSEL."

I

{¶ 15} In his first assignment of error, Worthington argues his convictions are against the manifest weight to the evidence. We disagree.

{¶ 16} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d

541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 17} Because Worthington does not challenge the sufficiency of the evidence, he necessarily concedes that the state produced sufficient evidence to prove Worthington knowingly caused or attempted to cause physical harm to T.D., a family or household member, and/or knowingly caused or attempted to cause physical harm to T.D. His arguments here are limited to his contention that his version of events was believable while T.D.'s version of events was not.

{¶ 18} Worthington points to 1.) inconsistencies between T.D.'s testimony at trial and her testimony at a civil protection order hearing, portions of which counsel for Worthington introduced into evidence; 2.) inconsistencies and omissions in T.D.'s accounting of events to detectives the morning of the assault and her trial testimony; 3.) the fact that photos T.D. took of the house before leaving showed blood in various areas of the house and photos taken by deputies at the scene did not; and 4.) photos of T.D.'s neck did not show evidence of strangulation.

{¶ 19} We have reviewed the entire record and find this is not an exceptional case wherein the evidence weighs heavily against conviction. To the contrary, photos of T.D. show extensive bruising over her entire body which are inconsistent with Worthington's explanations, and which render Worthington's arguments unconvincing. Simply because T.D.'s neck did not show outward signs of strangulation does not negate the injuries to the rest of her body. Further, while Worthington argues extensively that there was no blood found in the house as T.D. stated there would be, he ignores the fact that he failed to answer the door for several hours after deputies arrived at his home. Transcript of trial

(T.) 224. The jury could have reasonably concluded Worthington cleaned up any blood evidence. Moreover, the jury could have completely disregarded the blood evidence issue and still convicted Worthington based on the remaining overwhelming evidence of physical harm.

{¶ 20} The jury heard all the evidence of inconsistencies, viewed all of the photographs, and listened to Worthington's testimony. The jury was free to believe all, part, or none of any witnesses' testimony. We find the jury did not lose its way sorting out the inconsistencies, making its credibility determinations, and convicting Worthington.

{¶ 21} The first assignment of error is overruled.

II

{¶ 22} In his final assignment of error, Worthington argues his counsel rendered ineffective assistance. We disagree.

{¶ 23} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." Strickland at 694, 104 S.Ct. 2052.

{¶ 24} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential.

*Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18. Decisions about which witnesses to call involve matters committed to counsel's professional judgment. *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127 "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).

{¶ 25} Worthington first argues his counsel performed deficiently when he informed the jury during voir dire that this was his first jury trial and apologized to everyone except Worthington for that fact. A review of the record reveals counsel did advise the jury this was his first jury trial and indicated his presentation may not be as practiced and polished as the state's. Counsel then asked jurors if they could agree to hold any awkwardness against him and not Worthington, and all jurors agreed they could follow that directive. T. 16-17. Worthington does not explain how this exchange and counsel's failure to apologize to him amounts to performance below an objective reasonable standard, nor how it prejudiced him. Everyone has a first day. We find it was not unreasonable for counsel to inform the jury that this was his first day and to ask that any awkwardness in his presentation not be held against his client.

{¶ 26} Next Worthington argues counsel's failure to subpoena T.D.'s cell phone and Facebook records constitutes ineffective assistance. We note, however, that even though counsel did not subpoena these records from T.D.'s cell phone provider or

Facebook, counsel nonetheless cross-examined T.D. regarding text messages and Facebook posts which appeared to come from her accounts. Further, the exhibits were admitted into evidence. T. 129-135, Defendant's exhibits B-K. Worthington argues that had counsel subpoenaed the records, T.D. would not have been able to deny making the Facebook posts wherein she allegedly exaggerated her injuries. We find this argument to be speculative. Moreover, Worthington again fails to demonstrate prejudice. The state was not required to prove serious physical harm, but merely physical harm.

{¶ 27} Worthington's third argument states counsel rendered ineffective assistance by failing to subpoena essential witnesses. He lists four witnesses counsel should have subpoenaed, but fails to indicate how these witnesses were essential or how their testimony would have changed the outcome of the trial. We therefore reject this argument.

{¶ 28} Worthington next makes several arguments pertaining to debatable trial tactics by trial counsel. He faults counsel for failing to object to and move to strike unresponsive testimony elicited from T.D., for eliciting inadmissible and prejudicial testimony from T.D. regarding prior instances of domestic violence, T.D.'s offer to dismiss the charges if Worthington signed over ownership of a truck they jointly owned, and use of text messages between the two wherein T.D. references a felony violation of a protection order.

{¶ 29} While it is impossible to discern counsel's motivation, a review of the transcript suggests counsel sought to paint T.D. as over-reactive, attention seeking, and as exaggerating her injuries. We first note that "[d]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Hoffner*, 102 Ohio St.3d 358, 811 N.E.2d 48,

2004-Ohio-3430, ¶ 45. Second, even if we were to find counsel did perform deficiently by failing to object and by eliciting otherwise inadmissible evidence, the fact remains that the photographic evidence in this matter overwhelmingly establishes T.D. suffered extensive injury. Worthington cannot therefore establish prejudice.

{¶ 30} Worthington next argues counsel should have requested the appointment of a forensic physician to assess whether T.D.'s injuries were caused by self-harm or other means. However, "[t]he presentation of mitigating evidence is a matter of trial strategy." *State v. Keith*, 79 Ohio St.3d 514, 530, 684 N.E.2d 47 (1997). This is true even if counsel's chosen strategy proves unsuccessful. *State v. Frazier*, 61 Ohio St.3d 247, 255, 574 N.E.2d 483 (1991). Counsel thoroughly cross-examined the state's witnesses regarding the origin of T.D.'s injuries. While Worthington argues the appointment of a forensic physician would have been essential to his case, his reasoning is speculative and further fails to indicate how such appointment would have changed the outcome. See *State v. Foust*, 105 Ohio St.3d 137, 153-154, 2004-Ohio-7006, 823 N.E.2d 836, ¶¶ 97–99 (trial counsel's failure to request funds for a DNA expert, an alcohol and substance-abuse expert, a fingerprint expert, and an arson expert did not amount to ineffective assistance of counsel because appellant's need for experts was "highly speculative" and counsel's choice "to rely on cross-examination" of prosecution's expert was a "legitimate tactical decision.")

{¶ 31} Worthington next faults his trial counsel for failing to object to the forensic nurse's testimony regarding the possible method of injury when she was never tendered as an expert. His transcript references are to the state's questioning of the forensic nurse and photos she took of T.D.'s injuries. T. 241. When the state asked the nurse about

"what type of bruises" the photos showed, counsel for Worthington did object and a sidebar took place. The side bar conversation is not contained in the record. T. 242. Upon returning to questioning, however, the state moved away from asking the forensic nurse how specifically the injuries could have been inflicted. T. 243. We therefore find nothing to support a claim of ineffective assistance of counsel in this instance.

{¶ 32} Worthington also faults his counsel for failing to object to testimony from Detective Clark regarding general progression of bruising and whether or not T.D.'s injuries could have been consistent with falling off a motorcycle. Even if we were to find counsel should have objected to this testimony, we would still find Worthington has failed to demonstrate prejudice. T.D. testified as to how she received her injuries and photographs were taken of those injuries. The photographic evidence in this matter speaks for itself.

{¶ 33} Worthington further faults counsel for failing to object to T.D.'s testimony regarding how she received her injuries. He also takes issue with counsel failing to object to testimony from T.D. regarding blood at the scene when no testing was ever done to determine whether the blood belonged to T.D. But T.D.'s testimony as to what she experienced and witnessed is not objectionable testimony and the state is not required to conduct forensic testing.

{¶ 34} Finally, Worthington argues counsel should have objected to the admission of State's Exhibit 7, which it the report of the forensic nurse. Worthington argues counsel should have objected to the admission of this exhibit because it is allegedly filled with prejudicial evidence against him. Worthington fails to specify, however, exactly what

prejudicial evidence is contained in the report and we decline to make his arguments for him.

{¶ 35} The evidence in this matter was overwhelming. Thus, even if we found counsel's performance fell below an objective standard of reasonable representation in any of the above instances, Worthington still cannot demonstrate he was prejudiced thereby. The final assignment of error is overruled.

{¶ 36} The judgment of the Licking County Municipal Court is affirmed.


By King, J.,

Delaney, P.J. and

Hoffman, J. concur.