OPINION
Defendant-appellant, Dewey Edward Jones, appeals his conviction in the Brown County Court of Common Pleas for rape. We affirm the decision of the trial court.
This case arose from allegations that appellant performed fellatio on his nephew, Derek W., and Derek's friend, Sam W., both children under the age of thirteen. In November 1999, Derek reported to his school counselor that he and his friend Sam had been sexually abused by Derek's uncle, whose name they thought was "Edward Young." The counselor referred the matter to the Brown County Department of Human Services. The boys soon gave statements that they had been sexually abused by Derek's uncle, "Edward." Because of some confusion about the offender's name, an investigator at the Brown County Department of Human Services, with the help of the Mt. Orab Police Department, prepared a photo array. Derek and Sam separately picked appellant, Dewey Edward Jones, as the offender from the photo array in December 1999.
On March 8, 2000, appellant was indicted on eleven counts of rape in violation of R.C. 2907.02(A)(1)(b). Prior to his trial, appellant moved to suppress the photo identification because he contended it was impermissibly suggestive. During the course of the suppression hearing, it became necessary for the trial court to determine whether Derek, who was under the age of ten at the time, was competent to testify. The trial court allowed the state and appellant to question Derek concerning his competency to testify, and also asked its own questions of Derek. At the conclusion of the questioning, the trial court found that Derek was competent to testify. Derek testified, and the trial court ultimately denied appellant's motion to suppress the photo identification on June 27, 2000.
At trial, Derek and Sam testified that two of the rape counts took place one night between August 17, 1999 and September 27, 1999. In order to earn money for the Brown County Fair, Derek and Sam went to appellant's house to mow his lawn. When it became dark and the boys had not finished mowing, they agreed to spend the night. Derek and Sam testified that they spent much of the night playing Nintendo in appellant's bedroom. At some point in the night, Derek left the bedroom to use the bathroom. When Derek returned, he testified that he saw appellant with his mouth over Sam's penis. Sam similarly testified that appellant pulled down Sam's sweatpants and started "sucking his penis" when Derek left to use the bathroom. Sam said that Derek screamed for appellant to stop and kicked appellant in the ribs. Sam also kicked appellant so he would stop. Eventually, appellant stopped and went to the living room. Derek further testified that, later that same night, appellant put his mouth over Derek's penis. Derek and Sam also testified that appellant made them watch pornographic videos that night depicting men having sex with other men. Derek was eight years old at the time, while Sam was eleven. Counts 1 and 11 related to this 1999 incident at appellant's house.
Derek also testified that appellant put his mouth over his penis at least two times while he was in first grade. Counts 2 and 3 related to this testimony. Derek further testified that appellant put his mouth over his penis "three or four times" between the times in first grade and the incident involving he and Sam in 1999. Counts 4, 5, and 6 related to this testimony.
In addition to Derek and Sam, the state called Sheri Ruttencutter and Barry Creighton of the Brown County Department of Human Services. Ms. Ruttencutter testified that both boys gave statements to her that appellant had sexually abused them. Mr. Creighton testified as to the details of the photo identification procedure, and that Derek and Sam separately picked appellant from the photo array. Mr. Creighton testified that appellant met with him in his office on November 24, but did not give a statement. He further testified that appellant failed to show up for an interview scheduled in January.
At the conclusion of the state's case, the state dismissed Counts 7 through 10. Because of some confusion concerning where appellant had resided, the state moved to amend Counts 2 through 6 to allege that appellant's illegal acts occurred in either Brown or Clermont Counties. The trial court allowed the amendments.
Appellant testified in his own defense and denied all the allegations. He stated that Derek and Sam did spend the night at his house between August 17, 1999 and September 27, 1999. However, he testified that the boys only ate pizza, played Nintendo, and watched appropriate movies. Appellant testified that he did in fact give a statement to Mr. Creighton denying all the allegations, and that he never made a later appointment. He testified that he and Derek used to have a good relationship before the allegations arose.
The state called Timothy Stewart, a friend of appellant, as its lone rebuttal witness. Mr. Stewart testified that he was at appellant's house the same night Derek and Sam were there. His testimony contradicted some of the details of appellant's testimony. For example, Mr. Stewart testified that appellant had stopped by his house with the boys earlier in the day, while appellant testified that the boys had never been with him in his truck. Mr. Stewart testified that he went to pick up the pizza, while appellant had testified that it was delivered. Mr. Stewart also testified that he witnessed appellant carrying videos from his bedroom so that the boys could not watch them. When questioned about the videos, appellant allegedly responded: "Well, I'm single, I have the right." Appellant had denied that any pornographic videos were in his house at the time. Mr. Stewart did not, however, witness any sexual conduct between the boys and appellant as he left before the night ended.
The jury found appellant guilty on the seven remaining counts of rape in violation of R.C. 2907.02(A)(1)(b). Appellant made a motion for acquittal under Criminal Rule 29(A), which the trial court denied. Appellant was sentenced to six years in prison on Count 1, four years on Count 2, and six years on Count 11, all of these sentences running consecutively for a total of sixteen years. Appellant was sentenced to six years each on Counts 3 through 6 with those sentences running concurrently with the sentences for Counts 1, 2, and 11. The trial court also determined that appellant was a sexual predator. Appellant now appeals, raising two assignments of error.
Assignment of Error No. I:
 THE TRIAL COURT ERRED IN REACHING GUILTY VERDICTS AGAINST APPELLANT.
In appellant's first assignment of error, he argues that: (1) the jury's verdict was not supported by sufficient evidence and (2) the jury's verdict was against the manifest weight of the evidence. Appellant also argues that the state failed to prove venue.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
In order for an appellate court to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 389. Specifically, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. SeeState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was convicted of violating R.C. 2907.02(A)(1)(b) which provides:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 "Sexual conduct means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex[.]" R.C. 2907.01(A).
Upon thoroughly reviewing the record, we find that the jury's verdict on all seven of the rape counts was supported by sufficient evidence. Both Derek and Sam provided detailed testimony that appellant performed fellatio on them when they spent the night at appellant's house in 1999. This testimony by Derek and Sam, if believed, would convince the average mind of appellant's guilt beyond a reasonable doubt as to Counts 1 and 11.
Appellant argues that Derek's testimony was neither specific nor reliable enough to result in a conviction on Counts 2 through 6. We disagree. It does appear from the record that Derek was quite nervous and embarrassed during his testimony. At times, he was not responsive to the questions posed by the state. Nevertheless, the record shows that when asked if appellant had performed fellatio on him at least twice while he was in the first grade, Derek said, "Yeah." Also, when Derek was asked how many times appellant had performed fellatio on him between first grade and the time when he and Sam spent the night at appellant's house, he stated: "I'd say about three or four times, that's my guess." This testimony by Derek, if believed, reveals that appellant performed fellatio on Derek a minimum of five times, not including the night Derek and Sam stayed at appellant's house. We find that this testimony by Derek, if believed, would convince the average mind of appellant's guilt beyond a reasonable doubt as to Counts 2 through 6. Thus, the jury's verdict on all seven counts was supported by sufficient evidence.
We also find that the jury's verdict was not against the manifest weight of the evidence. Both Derek and Sam testified in detail that appellant performed fellatio on them when they stayed at appellant's house in 1999. Derek also testified that appellant performed fellatio on him at least twice while he was in first grade, and "three or four times" between first grade and when he and Sam spent the night at appellant's house in 1999. Additionally, the state presented the testimony of Ms. Ruttencutter of the Brown County Department of Human Services who testified that Derek and Sam gave her statements indicating that appellant had sexually abused them. Ms. Ruttencutter and Mr. Creighton testified that both Derek and Sam separately identified appellant from a photo array as the one who sexually abused them. Both boys also separately identified appellant as their sexual abuser at trial.
In contrast to the state's evidence, appellant denied the truth of any of the allegations. Appellant admitted that Derek and Sam had spent the night at his house one night in 1999, but denied that any sexual conduct occurred. On rebuttal, Mr. Stewart took the stand and contradicted some of the details of appellant's testimony, though he did not witness any of the alleged sexual conduct.
In resolving the conflicting testimony, we cannot say the jury lost its way or created a manifest miscarriage of justice. The jury was in the best position to assess the witnesses' credibility and apparently chose to believe the boys' testimony rather than the testimony of appellant. Therefore, the jury's verdict was not against the manifest weight of the evidence.
Appellant also argues that the state failed to present sufficient evidence of a "course of criminal conduct" which, appellant contends, was necessary to establish venue under R.C. 2901.12(H). Appellant argues that after the trial court allowed the state to amend Counts 2 through 6 to allege that the acts took place in either Brown or Clermont Counties, venue was no longer proper. We first note that appellant failed to raise this specific issue in the trial court. It is well-established that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. See State v. Comen
(1990), 50 Ohio St.3d 206, 211; State v. Broom (1988), 40 Ohio St.3d 277,288-89. Assuming, arguendo, that appellant had raised this issue below, we would find no error.
R.C. 2901.12(H) provides:
 When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 (1) The offenses involved the same victim, or victims of the same type or from the same group.
* * *
 (5) The offenses involved the same or a similar modus operandi.
 Applying the above statute, the record shows that venue was proper, even after Counts 2 through 6 of the indictment were amended. Derek testified that Counts 1 and 11 took place at appellant's house in Mt. Orab, Brown County. Derek also testified that appellant performed fellatio on him while appellant lived in Williamsburg above Grandma's Pizza, which Derek thought was either in Brown or Clermont Counties. Derek further testified that appellant performed fellatio on him at another of appellant's residences, the exact location of which he could not remember. Thus, Derek testified that at least one of the offenses occurred in Brown County, where the case was filed. Therefore, under R.C. 2901.12(H), appellant could be tried for all other offenses that were part of the same "course of criminal conduct," even if those offenses took place in another jurisdiction.
The state presented sufficient evidence to establish that the other counts of rape were part of appellant's "course of criminal conduct." Appellant's other offenses involved the same victim (Derek) and involved the same modus operandi, namely performing fellatio on a young boy while alone with the boy in appellant's home. Therefore, venue was proper in this case and the jury could consider evidence of acts committed in either Brown or Clermont Counties. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. II:
 THE TRIAL COURT ERRED IN DETERMINING THAT THE ALLEGED VICTIM, A MINOR CHILD UNDER TEN YEARS OF AGE, WAS COMPETENT TO TESTIFY AS A WITNESS AGAINST DEFENDANT-APPELLANT.
Appellant next argues that the trial court erred in finding Derek competent to testify. Appellant argues that Derek was not competent to testify under Evid.R. 601 and the factors set forth in State v. Frazier
(1991), 61 Ohio St.3d 247. Appellant asserts that Derek provided "almost no independent information" during the competency examination and that he did not "know what it meant to swear to tell the truth." Appellant argues that Derek's testimony did not demonstrate his ability to receive accurate impressions of fact, recollect impressions and observations, communicate his observations, or understand and appreciate a responsibility to be truthful. We disagree.
Ohio Rule of Evidence 601(A) provides:
Every person is competent to be a witness except:
 (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.
 The trial judge has a duty to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify. State v. Frazier (1991), 61 Ohio St.3d 247, 250-51. In determining whether a child under ten is competent to testify, the trial court must take into consideration: (1) the child's ability to receive accurate impressions of fact or observe acts about which he or she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what was observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of his or her responsibility to be truthful. Id. at 251. The determination of competency is within the trial judge's sound discretion. Id.
During the competency examination, the trial court had the opportunity to observe Derek respond to questions on direct and cross-examination. The trial court also asked its own questions of Derek. At the conclusion of the questioning, the trial court found that Derek was competent under Evid.R. 601 and each factor set forth in Frazier. We do not find that the trial court abused its discretion by finding Derek competent to testify. Though the transcript appears to show that he was very uncomfortable in court, Derek displayed the intelligence necessary to receive just impressions of facts and events, recollect them, and communicate them accurately. He stated who his teacher was during the past school year and talked about his grades. He testified that he lived in a blue and white trailer with his sister Tina and his mother, and that they all had their own rooms. He also talked about his friends, Frankie and Joey, who lived nearby. Given Derek's testimony, we cannot say that the trial judge, who actually observed the child, abused his discretion by finding that Derek could receive, recollect, and communicate just impressions of fact.
As support for the assertion that Derek was not capable of receiving, recollecting, or communicating just impressions of fact, appellant points to inconsistencies between Derek's trial testimony and the trial testimony of other witnesses. However, it is not the role of the trial judge to determine that everything a child will testify to is accurate, but whether the child has the intellectual capacity to accurately and truthfully recount events. State v. Leach (Feb. 20, 2001), Clermont CA 2000-05-033, unreported, at 5. Any inconsistencies between Derek's trial testimony and the testimony of other witnesses relate to his credibility, not his competency. See id.; State v. Rayburn (Apr. 24, 2000), Clinton CA99-03-005, unreported, at 6. Derek's credibility was for the jury's consideration.
The record also shows that Derek understood the concepts of truth and falsity. On direct examination, Derek testified that it would be a lie to call a blue shirt "red," but it would be the truth to call a blue shirt "blue." On cross-examination, Derek testified that even if everyone in the world said a blue shirt was red, the shirt would still be blue and everyone would be lying. He then specifically testified that he knew the difference between a story and the truth.
Derek also appreciated the responsibility to be truthful. On direct examination, he testified that people "get in trouble" when they do not tell the truth and that it is important to tell the truth when one takes an oath. Responding to a question from the trial judge, Derek testified that he understood how important it was to tell the truth in the courtroom. Based on Derek's testimony during the competency examination, we do not find that the trial court abused its discretion by finding Derek competent to testify under Evid.R. 601 and the factors set forth in Frazier. Accordingly, appellant's second assignment of error is overruled.
Based on the foregoing analysis, the judgment of the trial court is affirmed.
YOUNG, P.J., and VALEN, J., concur.