OPINION
{¶ 1} Defendant-appellant Gary Michael Hudgins appeals his conviction and sexual predator classification in the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 7, 2005, Appellant was charged by indictment with four counts of rape, in violation of R.C. 2907.02(A)(1)(c); and five counts of gross sexual imposition, in violation of R.C. 2907.05(A)(5). The indictment alleged a continuing course of conduct from January 1, 2000, to December 25, 2003.
 {¶ 3} The victim, Constance Ruth, was thirteen years old when the events began, and was sixteen at the time of trial. She has been diagnosed with adjustment disorder, not otherwise specified, cerebral palsy and demonstrated borderline intellectual functioning. She has also demonstrated symptoms of attention deficit disorder. Her full scale IQ score was 77, and her verbal ability is slightly higher then her performance IQ.
 {¶ 4} Both of Constance's parents are deceased, and she resides with her stepfather. Her step-father asked appellant's family if he could live with them in order to ease his financial situation. The Hudgins agreed. Constance's twin brother also moved into the Hudgins home with his sister.
 {¶ 5} On December 19, 2005, Appellant moved the trial court for a determination as to whether the victim Constance Ruth was competent to testify as a witness. The trial court conducted a hearing on the motion on January 26, 2006. A judgment entry was filed on January 12, 2006, finding Constance competent to testify. *Page 3 
 {¶ 6} At trial, Constance testified Appellant touched her "where he wasn't supposed to" while she lived in his home. She stated the first incident occurred at night, in her bedroom, during which Appellant asked her whether she wanted him to get in bed with her. She testified Appellant touched her vagina, inside and outside, asking whether it felt good. She described Appellant's penis as "hairy and gross," but stated she did not see it because the room was dark. She testified Appellant asked her whether she was going to tell anyone.
 {¶ 7} Constance described additional incidents of sexual abuse occurring in the living room of the home as she sat on the couch. She related incidents in which Appellant touched her breasts and her butt with his hand; specifically, three incidents in which he touched her breast with his mouth, and reached underneath her nightgown and underwear to touch the inside and outside of her vagina.
 {¶ 8} Constance informed Appellant's daughter of the conduct after the third and fourth incident, and they eventually told Appellant's wife. Constance testified Appellant's wife and daughter threatened to send her away if she told anyone. She did not tell her step-father about the abuse until after Hudgins arrest.
 {¶ 9} In December, 2004, Sergeant Eric Weisburn of the Stark County Sheriff's Department was investigating sex abuse allegations against Bob Ruth, Constance's step-father. During an unrelated interview, he learned of the alleged incidents herein, and initiated an investigation. As a result of the investigation, Constance commenced treatment at Northeastern Ohio Behavioral Health, meeting with psychological assistant Aimee Thomas for evaluation. She met with Thomas numerous times to determine *Page 4 
whether she had a diagnosable mental health condition requiring additional counseling and services, and to determine the nature and extent of the sexual abuse allegations.
 {¶ 10} The case proceeded to jury trial on February 2, 2006. The jury found Appellant guilty of one count of rape and five counts of gross sexual imposition. A sentencing hearing was held on March 9, 2006, and the trial court sentenced Appellant to seven years incarceration. The trial court further classified Appellant as a sexual predator.
 {¶ 11} Appellant filed an untimely motion for new trial, and the trial court denied the same.
 {¶ 12} Appellant now appeals his conviction, sentence and sexual predator classification, assigning as error:
 {¶ 13} "I. THE ALLEGED CHILD VICTIM WAS NOT COMPETENT TO TESTIFY IN ACCORDANCE WITH EVIDENCE RULE 601(A).
 {¶ 14} "II. THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING THE STATE'S EXPERT WITNESS, AIMEE THOMAS, TO TESTIFY AS TO THE EXPERT OPINION OF THE TRUTHFULNESS OF THE STATEMENTS OF THE CHILD DECLARANT, CONSTANCE RUTH.
 {¶ 15} "III. THERE WAS NO CLEAR AND CONVINCING EVIDENCE TO REQUIRE THE CLASSIFICATION OF THE APPELLANT AS A SEXUAL PREDATOR.
 {¶ 16} "IV. THE TRIAL COURT ERRORED [SIC] IN NOT ORDERING A NEW TRIAL IN ACCORDANCE WITH CRIMINAL RULE 33. *Page 5 
 {¶ 17} "V. THERE WAS NOT SUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY OF RAPE AND GROSS SEXUAL IMPOSITION AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 18} "VI. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 I {¶ 19} In the first assignment of error, Appellant argues Constance Ruth was not competent to testify at trial. Our standard of review is abuse of discretion. The term "abuse of discretion" suggests more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Apanovich (1987),33 Ohio St.3d 19, 22.
 {¶ 20} Ohio Rule of Evidence 601(A) states:
 {¶ 21} "Every person is competent to be a witness except:
 {¶ 22} "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 23} In State v. Said (1994), 71 Ohio St.3d 473, the Ohio Supreme Court held:
 {¶ 24} "Competency under Evid.R. 601(A) contemplates several characteristics. See State v. Frazier (1991), 61 Ohio St.3d 247, 251,574 N.E.2d 483, 487, certiorari denied (1992), 503 U.S. 941,112 S.Ct. 1488, 117 L.Ed.2d 629. Those characteristics can be broken down into three elements. First, the individual must have the ability to receive accurate impressions of fact. Second, the individual must be able to accurately recollect those impressions. Third, the individual must be able to relate those *Page 6 
impressions truthfully. See, generally, 2 Wigmore on Evidence (Chadbourn Rev. 1979) 712-713, Section 506."
 {¶ 25} It is the responsibility of the trial court judge to determine through questioning whether the witness is capable of receiving just impressions of facts and events to accurately relate them. State v.Wilson (1952), 156 Ohio St. 525.
 {¶ 26} Appellant cites the January 26, 2006 competency hearing in which Constance was unable to give her present address, stated she believes she is an angel, and she has conversations with her deceased mother. However, upon review of the transcript of the hearing, Constance's testimony demonstrated her ability to recite the schools she attended and homes she lived in. She had an understanding of truth and falsity, and indicated she understood an oath means she will tell the truth, and bad things happen to people who don't tell the truth.
 {¶ 27} The trial court observed Constance's demeanor and her manner of responding, deciding she was capable of receiving just impressions of facts and accurately relaying them. The trial court did not abuse its discretion in finding Constance competent to testify.
 {¶ 28} The first assignment of error is overruled.
 II {¶ 29} In the second assignment of error, Appellant asserts the trial court committed plain error in permitting the testimony of Aimee Thomas as to Constance's propensity for truthfulness.
 {¶ 30} Appellant failed to object to the testimony; therefore, waives any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would *Page 7 
have been otherwise. State v. Underwood (1983) 3 Ohio St.3d 12,444 N.E.2d 1332, at syllabus. The "plain error rule" should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice. Id. at 14.
 {¶ 31} As a general rule, an expert may not testify as to the expert's opinion of the truth or falsity, or accuracy or inaccuracy, of the statements of a child declarant. State v. Moreland (1990),50 Ohio St.3d 58. However, the Ohio Supreme Court held in State v. Stowers (1998),81 Ohio St.3d 260, an expert witness's testimony the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence.
 {¶ 32} Specifically, Appellant cites the following trial testimony of Aimee Thomas:
 {¶ 33} "Q. Okay. Now, can you describe the process for us when you conduct a sex abuse evaluation with a child?
 {¶ 34} "A. These are very structured, especially in the beginning. We review the rules of the assessment process. And the first part of that is to determine whether or not the client or the child knows the difference between telling the truth and telling a lie. And this is really critical.
 {¶ 35} "Connie was able to distinguish the difference between telling the truth and telling a lie. We review the importance of only telling the truth.
 {¶ 36} "In addition to that, we go over some rules where I want her to feel comfortable saying, I don't know, clarifying the question, especially when children are kind of raised they kind of put adults up on a pedestal. I wanted her to feel comfortable saying, Aimee, that's not right, and correct me when she felt the need to do so.
 {¶ 37} "Q. Okay. Was she able to do that? *Page 8 
 {¶ 38} "A. She demonstrated the ability to correct me."
 {¶ 39} "* * *
 {¶ 40} "The Court: I'm concerned that there's a potential bootstrap of what she's saying to this person's credibility. I believe there is a case on point that indicated that there is a fine line between what she can say, that's why I went to side-bar. I reviewed that. But where are you going with this?
 {¶ 41} "Ms. Barr: I was going to ask her basically, under the hearsay exception, what Connie related to her in much the same way that you're going to ask her about naked Twister, or any of those things.
 {¶ 42} "Ms. Bible: But I've asked the witness and she's denied it.
 {¶ 43} "Ms. Barr: I also asked the witness about what happened, she's already testified. And I guess that's why I would submit it.
 {¶ 44} "The witness has testified about what happened and so this isn't hearsay that, you know, if these aren't coming from her or coming from Aimee, say they're coming from the witness, and I believe it's an exception to the rule.
 {¶ 45} "The Court: Okay, you are not going to ask her whether she believed —
 {¶ 46} "Ms. Barr: No, no. I usually — I'll ask you if this is okay, ask her if, in her opinion, her behaviors and history are consistent with a child who is sexually abused. If you don't want me to ask her that, I won't.
 {¶ 47} "The Court: I think that's — I would permit this, but that goes too much to her testifying.
 {¶ 48} "* * * *Page 9 
 {¶ 49} "Ms. Barr: Yes, Your Honor. I wanted to inquire — and I thank the Court for your patience with respect to the issue of the opinion testimony of the expert who is now being crossed. I want to make sure that I understand what it is that I'm prohibited from eliciting.
 {¶ 50} "The Court: I can — I have now found the case, it's State v. Moreland which is 50 Ohio State 3d 58. Indicates experts may not testify as to the credibility or accuracy of the statement of a child witness.
 {¶ 51} "Ms. Barr: Okay.
 {¶ 52} "The Court: There's another case that is State v. Stowers, which is a later case not on that point, but it's 81 Ohio State 3d 260. Testimony by an expert witness that the behavior of an alleged victim of child abuse is consistent with that of other child abuse victims is admissible even if it conveys to the jury the expert's belief that the child was actually abused.
 {¶ 53} "That's what I mentioned, a very fine line between the credibility issue and other matters that are within the expert realm. So those are two cases that I bring to your attention —
 {¶ 54} "Ms. Barr: Okay.
 {¶ 55} "The Court: — to treat that particular matter. But it's the one that I was at the — very cautious about is experts may not testify as to the credibility or accuracy of the statements of a child witness. And I would assume that means any peripheral statement that would be under that specific issue in a case.
 {¶ 56} "Ms. Barr: So as I understand it, from the law, I am permitted to ask her if the behaviors of Constance Ruth are consistent with — *Page 10 
 {¶ 57} "The Court: State v. Stowers, the 81 Ohio State 3d 260 states that that is admissible. That is specifically, testimony by an expert witness that the behavior of an alleged victim of child abuse is consistent with that of other child abuse victims is admissible even if it conveys to the jury the expert's belief that the child was actually abused. And that's the fine line.
 {¶ 58} "Ms. Barr: Okay. And so with the Court's permission, may I lead her if I question her again?
 {¶ 59} "The Court: If you stay within the parameters of State v. Stowers.
 {¶ 60} "Ms. Barr: Sure. And lead her to make sure that we don't go outside of the parameters.
 {¶ 61} "* * *
 {¶ 62} "Q. Okay. I'd like to ask you a question based upon your training and experience in the field of child psychology and child abuse, and ask you if Connie's behavior's are consistent with a child who has been sexually abused?
 {¶ 63} "A. They are.
 {¶ 64} "Q. Okay. And can you state that to a reasonable degree of psychological certainty?
 {¶ 65} "A. Yes."
 {¶ 66} Tr. at 178-200.
 {¶ 67} Upon review, the trial court properly limited the testimony offered to the parameters set forth in Moreland and Stowers. Thomas' testimony properly described the evaluation process, and did not improperly bolster the credibility of Constance. *Page 11 
Thomas' conclusion was in accord with the parameters imposed by the trial court. The trial court did not abuse its discretion in permitting this testimony.
 {¶ 68} The second assignment of error is overruled.
 III {¶ 69} In the third assignment of error, Appellant asserts his classification as a sexual predator is against the manifest weight of the evidence.
 {¶ 70} In State v. Cook, supra, the Ohio Supreme Court determined R.C. Chapter 2950 is remedial in nature and not punitive. Therefore, we will review this assignment of error under the standard of review contained in CE. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. According to this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 71} R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B)(3) sets forth the relevant factors a trial court is to consider in making its determination. These factors are as follows:
 {¶ 72} "(3) In making a determination * * * as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 73} "(a) The offender's or delinquent child's age;
 {¶ 74} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses; *Page 12 
 {¶ 75} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 76} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 77} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 78} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 79} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 80} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 81} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 82} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct." *Page 13 
 {¶ 83} The trial court shall determine the offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. 2950.09(C)(2)(b). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate; being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal. Cross v. Ledford (1954),161 Ohio St. 469, 477.
 {¶ 84} The trial court's March 13, 2006 Judgment Entry states:
 {¶ 85} "The defendant was convicted by jury verdict of six sexually oriented offenses: one count of Rape [R.C. 2907.02(A)(1)(c) and five counts of Gross Sexual Imposition [R.C. 2907.05(A)(5), all occurring as a continuous course of conduct between on or about January 1, 2000, to on or about December 25, 2003. The victim's date of birth was May 18, 1989. The jury determined, as an element in each of its verdicts regarding the six counts, that the victim's ability to resist or consent was substantially impaired because of a mental or physical condition. Evidence presented at trial indicated that the victim suffered from the condition cerebral palsy and was diagnosed having an adjustment disorder not otherwise specified, borderline intellectual functions, and symptoms of attention deficit disorder.
 {¶ 86} "Being advised in the premises and having considered the relevant factors set forth at R.C. 2950.09(B)(3), the count finds by clear and convincing evidence that the defendant, Gary Michael Hudgins is a "sexual predator" and is subject to all the prohibitions, restrictions, registration and notice requirements of R.C. 2950.01 et seq." *Page 14 
 {¶ 87} The trial court properly considered the statutory factors set forth above. Its decision to classify appellant a sexual predator is not against the manifest weight of the evidence.
 {¶ 88} The third assignment of error is overruled.
 IV {¶ 89} In the fourth assignment of error, appellant asserts the trial court erred in denying his motion for a new trial pursuant to Ohio Criminal Rule 33.
 {¶ 90} The rule provides:
 {¶ 91} (B) Motion for new trial; form, time
 {¶ 92} "Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appearby clear and convincing proof that the defendant was unavoidablyprevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.
 {¶ 93} "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." *Page 15 
 {¶ 94} The following exchange occurred at the sentencing hearing herein:
 {¶ 95} "Mr. Baca: Your Honor, just to clarify, you had brought up, I think, what's under (A)(6) with new evidence being the 180 days. And just to make sure, we are not going on new evidence. There has been no time at this point, since I've been on the case, to look at any evidence. I am going (1) and (4) which it does state the 14 days.
 {¶ 96} "However, again, I'm just trying to be clear that this is a case where we had a Public Defender on the case representing him, who then, after the case, was done, may not have had contact with the client. With her case load, may not have pursued any further with what was going on.
 {¶ 97} "Upon me being retained by the family immediately upon that, going ahead and filing this motion. And, again, I think that would rise to the level of at least excusable neglect that the Court should consider at least in making its ruling on whether a new trial — whether we meet the time frame, and then whether it should be granted or not.
 {¶ 98} "The Court: Ms. Barr, anything?
 {¶ 99} "Ms. Barr: Your Honor —
 {¶ 100} "The Court: And I guess unexcusable neglect or inexcusable neglect is not the issue here. And I think that's where we may be.
 {¶ 101} "Ms. Barr: Okay.
 {¶ 102} "The Court: May be a bit vague. There is clear and convincing evidence that is required to show that the Defendant was unavoidably prevented from filing his motion for a new trial, in such case the motion shall be filed within seven days. That is *Page 16 
not, I believe, inexcusable neglect. That is not the same standard at all. And under the
 {¶ 103} "Mr. Baca: I'm sorry, Judge, where are you?
 {¶ 104} "The Court: I'm at 33(B), probably second or third, fourteen days, yes, the first rather lengthy sentence, shall be made by the motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion shall be filed within seven days. So it's a completely differently standard. It is not inexcusable neglect.
 {¶ 105} "Mr. Baca: And I understand that. I guess what I'm saying, there is no neglect on the part of my client. That his previous attorney did not file [sic] through with this filing of the motion. And I think on that, since there was nothing filed by the attorney, based on everything that is here, he should not then suffer the consequences of that. Once he brings in a new attorney who notices this and brings it right away to the Court's attention on the day — actually last week, when we first got here and I first appeared on his behalf after recently being retained.
 {¶ 106} "The Court: Anything further?
 {¶ 107} "Ms. Barr: Your Honor, I would just indicate, I believe you correctly stated the standard, clear and convincing proof. There's been no proof.
 {¶ 108} "Furthermore, the Court may require — at the conclusion of the jury's verdict, Ms. Bible did indicate an intention to consider filing a motion for a new trial at that time. So I don't think there is any evidence. It was missed. *Page 17 
 {¶ 109} "In any event, I would argue that's not relevant to clear and convincing proof whether the Defendant was unavoidably prevented from filing his motion.
 {¶ 110} "Mr. Baca: I almost — that begs the question, if she brought it up at that point in time and didn't do it for this client, that's almost ineffectiveness that she brought up something that I recognized as soon as I was brought in the case.
 {¶ 111} "The Court: It may have been a lot of other things, but that's not been unavoidably prevented. We have to be very precise because we're talking about jurisdiction of the Court to consider the motion.
 {¶ 112} "And I believe the ruling itself, and the decisions regarding that rule, it is a very narrow area where unavoidable prevention is the matter that needs to be shown. And at this point I don't see any unavoidable prevention that meets the request that is made here and the standard that is set forth by Rule 33(B). And for that reason, I don't believe I have jurisdiction.
 {¶ 113} "I think you are protected in your — in your review of this Court and the irregularities, as you point out, that you attribute to this Court, but it's not under a motion for a new trial.
 {¶ 114} "Mr. Baca: Yes, sir.
 {¶ 115} "The Court: I do not find that that is appropriate, and I don't have jurisdiction to do that under Rule 33 based upon what has been presented here.
 {¶ 116} "So with that, I will overrule the motion for a new trial and proceed to sentencing in this case."
 {¶ 117} Tr. at 394-399. *Page 18 
 {¶ 118} Upon review, we find the trial court did not abuse its discretion in overruling Appellant's motion for a new trial, as Appellant did not demonstrate by clear and convincing evidence he was unavoidably detained from filing his motion for new trial within the time parameters set forth by rule. Accordingly, the fourth assignment of error is overruled.
 V {¶ 119} In the fifth assignment of error, Appellant asserts his convictions for rape and gross sexual imposition were against the manifest weight and sufficiency of the evidence.
 {¶ 120} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 121} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised *Page 19 
only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 122} The offense of rape is defined in R.C. Section 2907.02:
 {¶ 123} (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 124} * * *
 {¶ 125} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 {¶ 126} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 127} The offense of gross sexual imposition is defined in R.C.2907.05:
 {¶ 128} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: *Page 20 
 {¶ 129} * * *
 {¶ 130} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 131} "(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 132} Appellant maintains the jury was not presented with sufficient evidence to find beyond a reasonable doubt Appellant knew or had reason to know Constance's ability to resist or consent was substantially impaired because of her mental or physical condition. Appellant further argues the only evidence offered at trial was the testimony of Constance Ruth, and, based upon her credibility, her testimony was not sufficient to rise to the level of proof beyond a reasonable doubt.
 {¶ 133} The evidence presented at trial establishes Constance's birthdate as May 18, 1989. Accordingly, she was thirteen years of age at the time the alleged sexual abuse began. The evidence demonstrates Constance has been diagnosed with adjustment disorder, not otherwise specified, cerebral palsy and borderline intellectual functioning. She and her step-father lived with Appellant and his family due to financial difficulties incurred caring for Constance. Aimee Thomas testified at trial Constance has an IQ of 74, and has impaired judgment and reasoning. She is developmentally at the level of a nine year old girl. Furthermore, the jury had ample opportunity to observe *Page 21 
Constance during her trial testimony. Constance herself testified as to the alleged incidents, and the weighing of the evidence and the credibility of the witnesses properly rests with the jury.
 {¶ 134} We find the jury's verdict was not against the manifest weight of the evidence and there was sufficient evidence to support the jury's verdict.
 {¶ 135} The fifth assignment of error is overruled.
 VI {¶ 136} In the final assignment of error, Appellant argues the ineffective assistance of his trial counsel.
 {¶ 137} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 138} First, we must determine whether counsel's assistance was ineffective, i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. As stated above, this requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the *Page 22 
trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267.
 {¶ 139} Appellant argues his trial counsel never requested an independent evaluation to determine whether Constance was able to perceive accurate impressions of fact and not confuse incidents and circumstances with a "fantasy world." We are left to speculate what the results of such an independent evaluation would have shown.
 {¶ 140} Based upon our analysis and disposition of the first assignment of error, Appellant has not demonstrated prejudice arising from the alleged error of trial counsel, pursuant to the second prong ofStrickland supra.
 {¶ 141} Appellant further argues trial counsel was ineffective in failing to request specific dates in the indictment, depriving Appellant of the opportunity to formulate a defense. However, Appellant does not demonstrate prejudice from the alleged error with regard to any alibi defense he may have raised. Furthermore, the crimes were part of a continuous course of conduct.
 {¶ 142} Appellant asserts the prosecution improperly led the testimony of Constance Ruth at trial without objection from defense trial counsel. Appellant argues Aimee Thomas improperly bolstered the truthfulness of Constance Ruth as set forth above, without the objection of trial counsel.
 {¶ 143} Again, based upon our disposition of the second assignment of error above, we find the argument without merit.
 {¶ 144} Finally, as discussed in the fourth assignment of error above, Appellant cites counsel's failure to timely file a motion for new trial. *Page 23 
 {¶ 145} Based upon our analysis and disposition of the first, second, third, fourth and fifth assignments of error set forth above; Appellant has not demonstrated prejudice in trial counsel's failure to file the motion for new trial. The record of this case does not establish any irregularity in the proceedings or an abuse of discretion by the trial court. Accordingly, Appellant cannot establish prejudice from counsel's alleged error, pursuant to Strickland supra.
 {¶ 146} The sixth assignment of error is overruled.
 {¶ 147} Appellant's conviction and sexual predator classification in the Stark County Court of Common Pleas is affirmed.
 Hoffman, P.J., Wise, J. and Delaney, J. concur *Page 24 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, appellant's conviction and sexual predator classification in the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1