[Cite as *In re D.W.R.*, 2026-Ohio-1433.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | No. 24AP-31 |
| | | (C.P.C. No. 23JU-4884) |
| [D.W.R., | : | |
| | | (REGULAR CALENDAR) |
| Appellant]. | : | |

---

D E C I S I O N

Rendered on April 21, 2026

---

**On brief:** *Mitchell A. Williams*, Public Defender, and *Leon J. Sinoff*, for appellant. **Argued:** *Leon J. Sinoff.*

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Benjamin A. Tracy*, for appellee. **Argued:** *Benjamin A. Tracy.*

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

DINGUS, J.

{¶ 1} Appellant, D.W.R., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, finding her to be a delinquent minor and placing her on community supervision. For the reasons that follow, we reverse and remand.

## I. Facts and Procedural History

{¶ 2} On September 10, 2021, complaints were filed in the Union County Court of Common Pleas, Juvenile Division ("Union County Juvenile Court"), charging D.W.R. with committing gross sexual imposition, in violation of R.C. 2907.05(A)(5), a fourth-degree felony if committed by an adult, and sexual imposition, in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor if committed by an adult.

{¶ 3} D.W.R. challenged the competency of the alleged victim, N.O., a developmentally disabled, 31-year-old male, and a competency hearing was held in

February 2022. At the hearing, Randle Davis, the supervisor at N.O.'s group home for those with developmental disabilities, testified that N.O. has schizophrenia and experiences visual and auditory hallucinations. N.O. testified that he did not know his own age, that he did not remember going to school, but that he remembered one of his teacher's names and that he liked eating lunch at school. He acknowledged the importance of telling the truth but admitted he did not know what a lie was. In response to the court asking him, "what does it mean when I tell -- when I say that you're not telling the truth?" (Feb. 10, 2022 Tr. at 17.) He answered, "I have no idea." (Tr. at 17.) The court and N.O. then discussed the color of N.O.'s coat:

> THE COURT: Okay. Would you -- would you agree with me that I think the color of your coat is green?
>
> [N.O.]: Yes.
>
> THE COURT: Would you agree with me?
>
> [N.O.]: Yes.
>
> THE COURT: Okay. What if I told you that your coat is blue? Would that be a truth or a lie?
>
> [N.O.]: True.
>
> THE COURT: That your coat's blue?
>
> [N.O.]: No, it's (inaudible).
>
> THE COURT: Okay, what color is your coat?
>
> [N.O.]: Green.
>
> THE COURT: Okay. So, if I told you it was blue, would that be a truth?
>
> [N.O.]: True.

(Tr. at 18-19.) When asked whether it was true or a lie that it was summery weather at the time, N.O. responded, "[u]ntrue," noting that it was cold that February day. (Tr. at 21.) In another exchange, the court identified someone in the courtroom as "Lauren," and asked N.O. if he now knew her name, to which N.O. responded, "I still don't know." (Tr. at 20.) Based on the evidence presented, the Union County Juvenile Court determined that N.O. was competent to testify.

{¶ 4} The Union County Juvenile Court held the trial concerning the allegations against D.W.R. on July 18 and 19, 2022. At trial, N.O. testified that D.W.R. inappropriately

touched him on his "wiener" when they were sitting on a couch at his father's house, and she tried to touch his "butt hole." (July 18, 2022 Tr. at 46, 47.) When this occurred, D.W.R. told N.O. that she could be his girlfriend.

{¶ 5} Davis, who had testified at the competency hearing, testified at trial that N.O. is mentally disabled and has been diagnosed with mild developmental disorder, psychosis, schizophrenia, and borderline bipolar disorder. Davis further testified that N.O. told him that D.W.R. asked N.O. "if she could put her finger in his butt hole," and that "she put her hands down the front of his pants and touched his penis." (Tr. at 42.) N.O. was upset when discussing his allegations against D.W.R. and feared he would get into trouble.

{¶ 6} Samantha Cook, an investigative agent with the Union County Board of Developmental Disabilities, testified that her agency received a report from the Marysville Police Department in March 2021 that N.O. had been inappropriately touched in his family's home. Her agency then investigated the incident, which revealed that N.O. had provided consistent information about it to multiple people.

{¶ 7} Dennis Flanagan, a detective with the City of Marysville, Division of Police, testified that, as part of his investigation of the incident, he interviewed N.O., who told the detective that D.W.R. had placed her hand on his penis over his underwear. Based on this information, Detective Flanagan requested and obtained the underwear that N.O. wore that day. The underwear was tested for DNA, but D.W.R. was excluded as a contributor to the DNA found on the item.

{¶ 8} D.W.R. testified at trial, and she denied ever inappropriately touching N.O.

{¶ 9} On August 29, 2022, the Union County Juvenile Court filed a judgment entry finding D.W.R. to be a delinquent minor, having committed gross sexual imposition, in violation of R.C. 2907.05(A)(5), a fourth-degree felony if committed by an adult, and sexual imposition, in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor if committed by an adult. In April 2023, the Union County Juvenile Court transferred the matter to Franklin County for disposition, based on D.W.R.'s residency. In December 2023, the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, reaffirmed the delinquency adjudication and placed D.W.R. on community supervision.

{¶ 10} D.W.R. timely appeals.

## II. Assignments of Error

{¶ 11} D.W.R. assigns the following seven assignments of error for our review:

[I.] Appellant's Constitutional Rights to a Fair Trial and Due Process of Law Were Denied Because the State's Key Witness Was Incompetent to Testify.

[II.] Permitting Virtual Testimony From the Key Witness Denied Appellant Her Constitution Rights to Confrontation.

[III.] The Juvenile Court's Complete Failure to Permit Closing Argument or Summation Violated Appellant's Constitutional Rights.

[IV.] Appellant Was Denied Her Constitutional Right to the Effective Assistance of Counsel When Counsel Failed to Wear His Hearing Aids During Trial and, as a Result, Was Reliably Unable to Hear the Testimony.

[V.] Insufficient Evidence Existed to Support Appellant's Convictions.

[VI.] The Juvenile Court Denied Appellant a Fair Trial and Due Process of Law by Demonstrating Bias Against the Defendant, Abusing its Discretion, and Rendering a Decision Contrary to the Manifest Weight of the Evidence.

[VII.] At Disposition, the Juvenile Court Erred in Failing to Merge Multiple Counts Involving Allied Offenses of Similar Import.

(Sic passim.)

## III. Discussion

{¶ 12} During the pendency of this appeal, the appellee, State of Ohio, filed a motion to dismiss, arguing this appeal is moot because D.W.R., without seeking a stay of execution, completed her term of community supervision and achieved discharge, and because the delinquency adjudication likely will be expunged with no remaining collateral consequences. Because the state's motion presents a threshold issue concerning this court's jurisdiction, we address it before resolving D.W.R.'s assignments of error.

{¶ 13} A case is rendered moot when the issue has "become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect

existing legal relations." (Internal quotations marks deleted and citations omitted.) *Doran v. Heartland Bank*, 2018-Ohio-1811, ¶ 12 (10th Dist.). "When a case is moot, it must be dismissed because it no longer presents a justiciable controversy." *Lund v. Portsmouth Local Air Agency*, 2014-Ohio-2741, ¶ 6 (10th Dist.).

{¶ 14} Generally, " '[a] person convicted of a felony has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed upon him or her. Therefore, an appeal challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal.' " *Cleveland Hts. v. Lewis*, 2011-Ohio-2673, ¶ 19, quoting *State v. Golston*, 1994-Ohio-109, syllabus. But an appeal from a misdemeanor conviction is moot when "the appellant has voluntarily completed the sentence and in which no collateral consequences resulted from the conviction." *Id.*, citing *Golston* at ¶ 7. That is, when a defendant voluntarily completes their sentence, an appeal from that judgment is moot " 'when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.' " *Golston* at ¶ 6, quoting *State v. Wilson*, 41 Ohio St.2d 236 (1975), syllabus. "A collateral disability is an adverse legal consequence of a conviction or judgment that survives despite the court's sentence having been satisfied or served." *Solon v. Bollin-Booth*, 2012-Ohio-815, ¶ 11 (8th Dist.), citing *In re S.J.K.*, 2007-Ohio-2621, ¶ 10. Although juvenile-delinquency proceedings are "not entirely civil or criminal in nature," as they "occupy a unique place in our legal system," there is no dispute that an appeal of a delinquency proceeding is not moot if there remains a collateral consequence to the disposition. (Further quotation marks deleted and citation omitted.) *In re D.R.*, 2022-Ohio-4493, ¶ 17.

{¶ 15} Here, D.W.R. was adjudicated delinquent, having been found to have committed the offenses of gross sexual imposition, in violation of R.C. 2907.05(A)(5), a fourth-degree felony if committed by an adult, and sexual imposition, in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor if committed by an adult, and she was placed on community supervision. She did not request that the period of supervision be stayed pending appeal. On November 4, 2024, and during the pendency of this appeal, the trial court terminated the community supervision. (Nov. 4, 2024 Jgmt. Entry.) The state argues that, based on this termination, D.W.R.'s appeal is now moot and should be dismissed. We disagree.

{¶ 16} The state asserts that the consequences of the delinquency adjudication, such as societal stigma from the finding that she committed sex offenses, may be removed if D.W.R. successfully applies for the sealing and then expungement of her juvenile record. But this assertion rests certainty on proceedings subject to trial court discretion, and speculation is not a basis for finding mootness. Furthermore, although D.W.R. has completed her community supervision, there remains a legal consequence to her adjudication as a delinquent child. Based on the delinquency adjudication, D.W.R. is prohibited from knowingly acquiring, having, carrying, or using any firearm. Under R.C. 2923.13(A)(2), "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . [t]he person . . . has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." For this purpose, an "offense of violence" includes a violation of R.C. 2907.05. And D.W.R. has not been relieved from this disability "under operation of law or legal process."

{¶ 17} Therefore, under the existing circumstances, R.C. 2923.13(A)(2) prohibits D.W.R. from knowingly acquiring, having, carrying, or using any firearm. This restricts her rights under the Second Amendment to the United States Constitution, which " 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' " *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 32 (2022), quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008). For this reason alone, this appeal is not moot. Thus, we deny the state's motion to dismiss.

{¶ 18} We now turn to the merits of D.W.R.'s appeal. In her first assignment of error, she contends she was denied her due-process rights at trial because the state's key witness was incompetent to testify. We agree, as does the state.

{¶ 19} Evid.R. 601(A) states that "[e]very person is competent to be a witness except as otherwise provided in these rules." Evid.R. 601(B) sets forth bases for witness disqualification, including when the (1) person is incapable of expressing himself or herself concerning the matter as to be understood, either directly or through interpretation by one who can understand him or her; and (2) the person is incapable of understanding the duty of a witness to tell the truth. Evid.R. 601(B)(1) and (2). *See* R.C. 2317.01(A) ("All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting

which they are examined, or of relating them truly."). A trial court's competency determination is reviewed for an abuse of discretion. *State v. Frazier*, 61 Ohio St.3d 247, 252 (1991). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} D.W.R., citing Evid.R. 601(A)(1) and (2), argues that it was plainly apparent at the competency hearing that N.O. was neither capable of understanding the concept of the truth nor capable of expressing himself concerning the matter at issue. In response, the state concedes that "the evidence adduced during the competency hearing shows clearly that [N.O.] was neither of sound mind nor capable of understanding the duty of a witness to tell the truth." (State's Brief at 13.) We agree that there was no reasonable dispute that N.O. was incapable of understanding the duty of a witness to tell the truth. At the competency hearing, N.O. demonstrated very little, if any, understanding of the difference between telling the truth and telling a lie. Although N.O. acknowledged the importance of telling the truth, his testimony at the competency hearing revealed that he lacked a fundamental understanding of what "telling the truth" actually entails. When he was specifically asked what it means to not tell the truth, he answered, "I have no idea." (Feb. 10, 2022 Tr. at 17.) And a discussion on something as rudimentary as the color of his coat reflected N.O.'s deficient understanding of the truth. He stated his own coat was green, and then immediately said it was true that the coat was blue. Considering this testimony, we agree with the parties that the evidence clearly demonstrated N.O.'s incompetence to testify on the basis that he was incapable of understanding the duty of a witness to tell the truth. *See* Evid.R. 601(A)(2). And given this circumstance, we find it unnecessary to review any possible additional basis for his incompetence, such as under either Evid.R. 601(A)(1) or R.C. 2317.01(A).

{¶ 21} D.W.R. further argues that, because N.O.'s allegations were the primary basis for the Union County Juvenile Court's adjudication findings, allowing him to testify was prejudicial error. The state agrees this error was prejudicial. Indeed, the admission of N.O.'s testimony was prejudicial because he was the only witness with direct personal knowledge of the incident to accuse D.W.R. of committing the offenses. And although hearsay testimony from other witnesses regarding N.O.'s statements about the incident was also admitted into evidence, that evidence also suffers from the same reliability deficiency. If the requirements of Evid.R. 601(A) "are not met and the declarant really is incompetent,

then it would seem to follow that any statement made by the declarant to another person, who is then called upon to repeat for evidentiary purposes the declarant's statement, would also be tainted by the incompetency of untruthfulness and thus would be inadmissible hearsay." *State v. Boston*, 46 Ohio St.3d 108, 114 (1989). In the absence of N.O.'s allegations, there was no evidence that D.W.R. committed the charged offenses. Thus, we agree with both parties' position that it was prejudicial error for the Union County Juvenile Court not to find N.O. incompetent to testify.

{¶ 22} Accordingly, we sustain D.W.R.'s first assignment of error.

{¶ 23} Considering our disposition of D.W.R.'s first assignment of error, all but one of her remaining assignments of error are rendered moot. Her second assignment of error alleges the trial court erred in permitting a key witness to testify virtually. Her third assignment of error contends that the trial court erred in failing to permit a closing argument or summation. In her fourth assignment of error, she asserts she was denied effective assistance of counsel because her counsel did not wear his hearing aids during the trial and was unable to hear the testimony. Her sixth assignment of error asserts that the delinquency adjudication was against the manifest weight of the evidence. And, in her seventh assignment of error, she alleges the trial court erred in not merging counts involving allied offenses of similar import. Because our disposition of D.W.R.'s first assignment of error means the trial court's judgment must be reversed, each of these assignments of error are moot. *See State v. Gideon*, 2020-Ohio-6961, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court.").

{¶ 24} D.W.R.'s fifth assignment of error, however, is not rendered moot by our disposition of her first assignment of error. In her fifth assignment of error, D.W.R. contends there was insufficient evidence to support the delinquency adjudication. While our disposition of D.W.R.'s first assignment of error requires the reversal of the trial court's judgment, a remand to that court would not be appropriate if the evidence was insufficient to support the delinquency adjudication, because a retrial would be barred. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, bars a retrial if "the evidence was legally insufficient to support the conviction." *State v. Thompkins*, 1997-Ohio-52, ¶ 26, citing *Tibbs v. Florida*, 457 U.S. 31 (1982); *see State v. Brewer*, 2009-Ohio-593, ¶ 18 (noting that

a reversal based on insufficient evidence is equivalent to an acquittal and bars a retrial for the same offense).

{¶ 25} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *Thompkins* at ¶ 21. Sufficiency is a test of adequacy. *Id.* at ¶ 23. The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 2014-Ohio-1251, ¶ 38 (10th Dist.), citing *State v. Tenace*, 2006-Ohio-2417, ¶ 37. Evidence considered in this review includes improperly admitted evidence. "[W]here the evidence offered by the State and admitted by the trial court -- whether erroneously or not -- would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." *Lockhart v. Nelson*, 488 U.S. 33, 34 (1988). Although the Union County Juvenile Court should not have permitted N.O. to testify, his testimony was admitted and must therefore be considered in reviewing the sufficiency of the evidence.

{¶ 26} D.W.R. was adjudicated delinquent for committing the offenses of gross sexual imposition, in violation of R.C. 2907.05(A)(5), a fourth-degree felony if committed by an adult, and sexual imposition, in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor if committed by an adult. R.C. 2907.05(A)(5), which prohibits gross sexual imposition, states as follows:

> No person shall have sexual contact with another . . . when any of the following applies:
>
> . . .
>
> The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition . . ., and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person . . . is substantially impaired because of a mental or physical condition[.]

For the purpose of this statute (and R.C. 2907.06(A)), "[s]exual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 27} R.C. 2907.06(A), which prohibits sexual imposition, states that "[n]o person shall have sexual contact with another . . . when the offender knows that the sexual contact is offensive to the other person . . . or is reckless in that regard." "No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." R.C. 2907.06(B). "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." *State v. Economo*, 1996-Ohio-426, syllabus. Evidence that the alleged victim was "scared and upset" and "on the verge of crying" constitutes the type of circumstances that may sufficiently corroborate a sexual imposition allegation. *Id.* at ¶ 13.

{¶ 28} Here, the evidence, when viewed in a light most favorable to the prosecution, demonstrated that D.W.R. engaged in gross sexual imposition and sexual imposition. N.O. testified that D.W.R. touched his "wiener," and another witness testified that N.O. has a mental disability and that he seemed upset by the incident. This evidence reasonably demonstrated that D.W.R. engaged in sexual contact with N.O., even though N.O.'s ability to resist or consent was substantially impaired by his mental condition, and that she was at least reckless as to whether the sexual contact was offensive to N.O. *See* R.C. 2907.05(A)(5) and R.C. 2907.06(A)(1).

{¶ 29} For these reasons, we overrule D.W.R.'s fifth assignment of error.

## IV. Disposition

{¶ 30} Having denied the state's motion to dismiss, sustained D.W.R.'s first assignment of error, overruled D.W.R.'s fifth assignment of error, and found as moot D.W.R.'s second, third, fourth, sixth, and seventh assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, and remand this matter to that court for further proceedings consistent with law and this decision.

*Motion to dismiss denied*;
*judgment reversed*;
*cause remanded.*

BEATTY BLUNT and JAMISON, JJ., concur.

———————————